**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| JAMES MURRAY; LATAVIUS PASCAL; ANTONE HENDERSON,<br>Plaintiffs<br><br>Versus<br><br>JAMES LEBLANC, SECRETARY OF DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS;<br>SHERIFF SAMMIE BYRD, SHERIFF OF MADISON PARISH;<br>LASALLE MANAGEMENT, LLC;<br>WARDEN ARTHUR ANDERSON;<br>ASSISTANT WARDEN CHRIS STINSON;<br>MAJOR TOMMY FARMER; MAJOR STEVEN CHASE; LIEUTENANT CANTRELL GUICE; CAPTAIN JOHN MURRAY;<br>CAPTAIN WENDELL HUGHES; CAPTAIN EDWARD MCDOWELL; SERGEANT JONATHAN KNOX; SERGEANT SHEPHERD; C.O. ESCO TILLMAN; C.O. ROBERT THORNTON; C.O. JANE DOE; OLD REPUBLIC UNION INSURANCE COMPANY,<br><br>Defendants | *<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Civil Docket Number: 21-cv-592-SDD-RLB<br><br>JUDGE: SHELLY D. DICK<br><br>MAGISTRATE:<br>RICHARD L. BOURGEOIS |

<u>**OPPOSITION TO DEFENDANT LEBLANC'S MOTION TO DISMISS**</u>

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs James Murray, Latavius Paschal, and Antone Henderson, who oppose Defendant LeBlanc's Motion to Dismiss.[1]

**I.       FACTUAL AND PROCEDURAL BACKGROUND**

James Murray, Latavius Paschal, and Antone Henderson were repeatedly attacked and injured physically and psychologically while housed at Madison Parish Correctional Center

---

[1] ECF No. 26.

1

(MPCC). Defendant LeBlanc's actions and failures to act caused the harm befell these three people.

In 1996, DPSC entered into a formal partnership with Sheriffs of the State of Louisiana to hold DPSC-sentenced prisoners in facilities owned and operated by Sheriffs and private entities in order to resolve constitutional challenges arising from capacity limits of state-operated facilities.[2] Nearly half of people serving a DPSC sentence in Louisiana are held in non-DPSC facilities, i.e., local jails.[3] DPSC and the Sheriff's developed Basic Jail Guidelines ("BJG" or "Guidelines") designed to ensure the constitutional rights of people held in local jails housing sentenced prisoners are not prejudiced.[4]

DPSC does not monitor or audit local facilities sufficiently to ensure facility compliance with the Guidelines and the United State Constitution – relying exclusively on unverified facility self-reports and perfunctory monitoring reports.[5] No proper classification, staffing, or investigative policy, practice or plan exists at MPCC.[6] As a result of these deficiencies, serious harm has happened to Plaintiffs.

The conditions created by Defendant LeBlanc continue to pose a serious of risk of harm to each of these men. Plaintiff Murray is now a sentenced prisoner.[7] Antone Henderson remains housed in a local facility that also houses sentenced prisoners. Both he and Latavius Paschal may become sentenced prisoners in Louisiana. The facts and reasonable inferences from Plaintiffs' Second Amended Complaint show that Defendant LeBlanc had a responsibility to ensure adequate classification policies and procedures, but failed to do so.

---

[2] ECF No. 27, ¶22; Williams v. McKeithen, M.D. La. 71-98B, Docket No. 9241.
[3] ECF No. 27, ¶23.
[4] ECF No. 27, ¶26-29.
[5] ECF No. 27, ¶30-32.
[6] ECF No. 27, ¶33-37.
[7] ECF No. 27, ¶110.

Plaintiffs pleaded these allegations in their Original Complaint,[8] Amended Complaint,[9] and Second Amended Complaint.[10] Defendant LeBlanc in response moved to dismiss under both 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim.[11]

## II.   LEGAL STANDARD

### a.   Standard for 12(b)(6) Dismissal

Dismissal under Rule 12(b)(6) is disfavored and rarely granted.[12] Under the 12(b)(6) standard, all well-pleaded facts must be viewed in the light most favorable to the plaintiff.[13]  Plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim.[14] Courts generally confine their analysis under Rule 12(b)(6) to the complaint and its proper attachments, which "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[15]

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16] The well-pleaded facts must permit the court to infer more than the mere possibility of misconduct.[17] Even if a plaintiff's complaint is found deficient under Rule 12(b)(6), the proper

---

[8] ECF No. 1.

[9] ECF No. 4-1.

[10] ECF No. 27. The exclusive amendments to the Complaints have been to correct Defendant LaSalle's named insurer. These amendments have had no impact on Plaintiffs' claims against Defendant LeBlanc.

[11] ECF No. 26. By an accident of timing, Defendant LeBlanc filed his Motion to Dismiss Plaintiffs First Amended Complaint, after Plaintiffs' leave to file Second Amended Complaint was granted, ECF No. 25, but before the Complaint was actually filed into the record. As the only difference between the First and Second Amended Complaints is the named insurer, Plaintiffs respond to Defendant LeBlanc's motion as a Motion to Dismiss the now controlling Second Amended Complaint.

[12] Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982).

[13] Hale v. King, 642 F.3d 492, 498-99 (5th Cir. 2011) (en banc).

[14] Id.

[15] Id., quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

[16] Id.

[17] Id.

remedy is usually to allow the plaintiff to amend the complaint to cure any deficiencies, rather than dismissal with prejudice.[18]

### b. Standard for 12(b)(1) Dismissal

Motions to dismiss under Rule 12(b)(1) are analyzed under the same standard as motions to dismiss under Rule 12(b)(6).[19]   Thus under 12(b)(1) analysis, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.[20] Additionally, under 12(b)(1), the court may consider extrinsic evidence along with the pleaded complaint to determine jurisdiction.[21]

The party asserting jurisdiction bears the burden of proof that jurisdiction does exist.[22] But such a motion "should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitled plaintiff to relief."[23] Dismissal of a claim is only proper when the court lacks statutory or constitutional power to adjudicate the claim.[24]

## III.    ARGUMENT

### a. The Eleventh Amendment Does Not Bar Official Capacity Claims for Non-Monetary Relief.

Defendant LeBlanc's primary 12(b)(1) argument is that the Eleventh Amendment bars a Plaintiff from seeking monetary damages against the State or Defendant LeBlanc in his official capacity. Plaintiffs do not seek monetary damages from Defendant LeBlanc in his official capacity.

---

[18] Public Health Equip. & Supply Co. v. Clarke Mosquito Control Equip., Inc., 410 Fed. Appx. 738, 740 (5th Cir. 2010) (finding that district court erred in denying plaintiff's motion to amend complaint after dismissal under Rule 12(b)(6)).

[19] Benton v. U.S., 960 F. 2d 19, 21 (5th Cir. 1992).

[20] Sonnier v. State Farm Mutual Auto Ins. Co., 509 F. 3d 673, 675 (5th Cir. 2007).

[21] Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). Exhibits attached to this opposition support this Court's jurisdiction over Plaintiff's prospective injunctive claims against Defendant LeBlanc.

[22] Hall v. Louisiana, 974 F.Supp.2d 978, 986 (M.D. La. 2013); Celestine v. Trans Wood, Inc., 467 Fed. Appx. 317, 318 (5th Cir. 2012).

[23] Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), citing Home Builders Ass'n, Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir.1998).

[24] Lewis v. Brown, CIV.A. 14-435-JWD-SC, 2015 WL 803124, at *1 (M.D. La. Feb. 25, 2015); Home Builders Ass'n, Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998).

Plaintiffs' prayer for relief includes a prayer for declaratory and injunctive relief as to Defendant LeBlanc.[25] Because Plaintiffs seek only non-monetary relief from Defendant LeBlanc in his official capacity, their official capacity claims against him are not barred on the basis of jurisdiction.

Further, Plaintiffs remain subject to continuing risk of harm arising from Defendant LeBlanc's conduct,[26] namely allowing sentenced people to be housed in facilities without classification. Thus, the injunctive relief Plaintiffs seek is prospective to enjoin the state from continuing to violate the United States Constitution. Well settled Supreme Court and federal jurisprudence holds that "the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law."[27] Further, "remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law."[28]

As a procedural matter, Plaintiffs' request for prospective injunctive relief states a claim against Defendant LeBlanc in his official capacity.

### b. Plaintiffs' Complaint States a Claim Against Secretary LeBlanc in His Individual and Official Capacities.

Defendant claims dismissal is warranted because "Plaintiffs have not alleged that Mr. LeBlanc was, in any way, involved with the day-to-day operations of the MPCC" or that he "had

---

[25] ECF No. 27 at 41.

[26] Correctly, Defendant LeBlanc has not raised any issue of this Court's jurisdiction to consider and/or Plaintiffs' standing to bring their injunctive claim as to Defendant LeBlanc. Murray is currently a sentenced prisoner in DPSC custody, ECF No. 27, ¶110, and Henderson remains housed in a local jail facility that also houses sentenced prisoners, thus both of these Plaintiffs continue to face a risk of harm from DPSC's inadequate supervision of local jails housing sentenced prisoners. See e.g. Williams v. Wilkinson, 132 F. Supp. 2d 601, 606 (S.D. Ohio Feb. 20, 2001) (holding a detainee had standing to challenge a disciplinary procedure at facility because of his confinement there); Sweet v. McDonough, 2007 WL 567289 (N.D. Fl Feb. 16, 2007) (accord); Osterback v. Moore, 2001 WL 1770092 (N.D. Fl. Nov. 6, 2001) (accord)).

[27] Green v. Mansour, 474 U.S. 64, 68 (1985), citing Ex Parte Young, 209 U.S. 123, 155-156, 159 (1908).

[28] Id.

the legal right or ability to dictate the day-to-day operations."[29] Plaintiffs do not need to show day-to-day involvement to maintain a claim. Plaintiffs plead that Defendant LeBlanc has the ability and authority to direct policies, supervision, and operations at MPCC.[30] Plaintiffs' claims against Defendant LeBlanc in his individual and official capacity both arise from his failure as a supervisor[31] to implement and enforce policies and procedures to ensure that the local jails holding sentenced prisoners, including MPCC, are housing people in conditions of confinement that meet the obligations of the United States' Constitution.

A supervisor is liable under § 1983 for failures to supervise or train individuals and entities under their control, and/or for polices or failures to implement policies, when they exhibit objective deliberate indifference towards likely or obvious rights violations arising from these failures of training, supervision, or policy.[32]

> i. *LeBlanc exerts supervisory influence over local jails housing sentenced prisoners through the Basic Jail Guidelines and Discretionary Contractual Authority.*

Defendant LeBlanc, as the secretary of the Department of Corrections, was and is a policymaker for local jails housing sentenced prisoners. As this Court has found:

> Louisiana law is clear that, no matter where State inmates are physically housed, they are legally in the custody of the DOC. … Louisiana Revised Statute § 15:1824(A) states that "any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the

---

[29] ECF No. 26-1 at 6.

[30] E.g., ECF No. 27, ¶45.

[31] The Fifth Circuit generally treats § 1983 failure-to-supervise and failure-to-train claims as subject to the same standards and essentially interchangeable. See, e.g., Smith v. Brenoettsy, 158 F.3d 908, 911-12 (5th Cir. 1998).

[32] Porter v. Epps, 659 F. 3d 440, 446 (5thCir. 2011); Gates v. Texas Dep't of Prot. & Reg. Servs., 537 F.3d 404, 435 (5th Cir. 2008)(finding supervisory liability when "(1) he affirmatively participates in the acts that cause the constitutional deprivation, **or** (2) he implements unconstitutional policies that causally result in constitutional injury.")(emphasis added); See also Brumfield v. Hollins, 551 F.3d 322, 328 (5th Cir. 2008); Davidson v. City of Stafford, Texas, 848 F.3d 384, 397–98 (5th Cir. 2017) (defining objective deliberate indifference when supervisor fails to adopt a policy when likely deprivation of constitutional rights is a likely consequence of failure to adopt policy.).

department." Under the law, DOC has the authority to "enter into a contract with a law enforcement district, municipal, or parish governing authority to house additional prisoners."[33]

Louisiana's unique structure of housing sentenced prisoners in local jails arises from the 1996 resolution of a § 1983 lawsuit regarding the capacity limitations in state-operated facilities.[34] "To assure that that the fundamental constitutional rights of DPS&C offenders housed in local jails would not be jeopardized by such housing arrangements," the state of Louisiana and Louisiana Sheriff's Association established Basic Jail Guidelines ("BJG" or "Guidelines").[35] Currently, and for the last quarter century, "It is the Secretary's policy that all local jail facilities that house state offenders on a continuing basis shall comply with the BJG…Facilities that do not agree to the BJG, or who fail to maintain certification of BJG compliance by the DPS&C, shall not be allowed to house state offenders for periods extending 30 days after the offenders sentencing date."[36]

Defendant LeBlanc has confirmed in testimony that local sheriffs must agree to operate and maintain the jail facility in accordance with the Basic Jail Guidelines.[37] Further, Defendant LeBlanc has confirmed that DPSC can direct sheriff's practices through the Basic Jail Guidelines and annual audits.[38] Defendant LeBlanc also testified that along with monitoring local jail's compliance with the Guidelines he sends representatives:

> To sit down with the sheriff and his warden to talk about how we're going to fix them. So it's one of those deals where we try to help them get to where they need to be. We don't shut them down and close them down, because, obviously, they've committed, and it's a partnership. So we work as partner with them to improve it.

---

[33] <u>Crittindon v. Gusman</u>, No. CV 17-512-SDD-EWD, 2020 WL 1862467, at *12 (M.D. La. Apr. 13, 2020).
[34] ECF No. 27, ¶22; See <u>supra</u>, fn 23; Exhibit 1, Basic Jail Guidelines at 2; <u>Williams v. McKeithen</u>, M.D. La. 71-98B, Docket No. 9241.
[35] Exhibit 1, Basic Jail Guidelines at 2.
[36] Exhibit 2, Department Regulation No. JO-1.
[37] Exhibit 3, 7/9/2019 Deposition of LeBlanc, 84:6-85:21; Exhibit 4, 1/7/2022 Deposition of LeBlanc, 56:4-23.
[38] Exhibit 4, 1/7/2022 Deposition of LeBlanc, 60:6-12. This testimony was given in a case centered on over detention, but it illuminates the more general influence DPSC has over local jails through the BJG.

…we work with them, and we get them in compliance. And that happens on a fairly regular basis.[39]

Defendant LeBlanc went on to clarify that the department has discretion on where to house sentenced people, "we can decide whether we house them on that local jail or not. And most of that is on the basic jail guidelines. If they meet the basic jail guidelines, then we allow them to house them."[40]

As this Court has found, this discretion gives the Department significant influence: "DOC compensates local Sheriffs for holding DOC-sentenced inmates; surely that money could be made to talk … whether in … refusal to house inmates in non-compliant parishes, or some other measure."[41]

Taking Plaintiffs' claims in the light most favorable to them, as required at this stage, Plaintiffs have stated a basis for Defendant LeBlanc's supervisory and policymaker role over local jails housing sentenced people, including MPCC.[42] This position is supported by the jurisprudence of this Court and Defendant LeBlanc's testimony in other cases related to his relationship to local jails housing sentenced prisoners.

> ii.     *Defendant LeBlanc was deliberately indifferent to substantial risk of harm caused by failing to ensure classification policies and practices at local jails housing sentenced people.*

As the Fifth Circuit succinctly summarized the law in Porter v. Epps, "[a] failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights."[43]

---

[39] Exhibit 3, 7/9/2019 Deposition of LeBlanc, 70:4-71:10. This testimony was given in a case centered on over detention, but illuminates the close supervisory relationship DPSC has over local jails housing sentenced people.
[40] Exhibit 3, 7/9/2019 Deposition of LeBlanc 84:23-85:2.
[41] Crittindon v. Gusman, No. CV 17-512-SDD-EWD, 2020 WL 1862467, at *12 (M.D. La. Apr. 13, 2020).
[42] ECF No. 27, ¶22-48.
[43] Porter v. Epps, 659 F.3d 440, 446 (5th Cir. 2011) (internal quotations omitted).

The Supreme Court explicitly adopted an <u>objective</u> deliberate indifference standard, requiring a showing that the supervisory official knew or should have known that a particular policy or practice would present a risk of violating the plaintiff's rights.[44] The Fifth Circuit has also adopted this objective deliberate indifference standard in determining the individual liability of policy makers for failures to adopt policies to protect individual constitutional rights.[45]

Failure to ensure institutions housing sentenced prisoners have a sufficient written classification policy, and abide by that policy, creates an obvious risk to individual constitutional rights for sentenced and pre-trial people held at such facilities.

The Fifth Circuit has long recognized that prison and jail officials have a constitutional duty to protect prisoners from violence by other inmates.[46] Further, the Fifth Circuit has long recognized that some sort of classification system is a requirement for a constitutionally adequate facility. In <u>Pembroke v. Wood Cty., Texas</u>,[47] the Fifth Circuit upheld the district court's instruction to a jury that a classification system that failed to segregate convicted and pre-trial detainees "constituted a violation of minimum constitutional standard." The <u>Pembroke</u> Court relied on a long line of Fifth Circuit cases recognizing that cruel and unusual punishment can result from a high level of violence and a failure "to control or separate prisoners who endanger the physical safety of other prisoners."[48]

Plaintiffs pleaded Defendant LeBlanc is or should be on notice of the need for sufficiently-written and implemented classification policies.[49] In addition to this well-established

---

[44] <u>City of Canton v. Harris</u>, 489 U.S. at 390; <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011) (holding that notice to policymaker may be actual or constructive).
[45] <u>Doe v. Taylor Indep. School Dist.</u>, 15 F.3d 443, 453 (5th Cir. 1994); <u>Porter</u> 659 F. 3d at 446.
[46] <u>Johnson v. Johnson</u>, 385 F. 3d 503, 524 (5th Cir. 2004).
[47] 981 F.2d 225, 229 (5th Cir. 1993).
[48] <u>Jones v. Diamond</u>, 636 F.2d 1364, 1374 (5th Cir. 1981), <u>overruled by</u> <u>Int'l Woodworkers of Am., AFL-CIO & its Loc. No. 5-376 v. Champion Int'l Corp.</u>, 790 F.2d 1174 (5th Cir. 1986), citing <u>McCray v. Sullivan</u>, 509 F.2d 1332, 1334 (5th Cir. 1975), cert. denied, 423 U.S. 859 (1975); <u>Gates v. Collier</u>, 501 F.2d 1291, 1308-10 (5th Cir. 1974)).
[49] ECF No. 27, ¶22, 26-32.

jurisprudence, Basic Jail Guideline II-A-012 requires a classification system that includes a written policy and procedure providing for a written classification plan. Housing assignments are to consider age, gender, legal status, custody needs, special problems and needs, and behaviors. Further classification must be done by an objective process that identifies appropriate custody, appropriate housing assignment, and identifies the prisoner's interest and eligibility to participate in programs. The Basic Jails Guideline lists housing records and classification records as documentation of adherence to this guideline.[50]

Additionally, Defendant LeBlanc is involved in setting goals and priorities for the strategic plan periodically developed by DPS and C.[51] The strategic plan submitted in September 2019 includes a section on "Local Housing of State Adult Offenders."[52] Objective I.1 is to "Utilize local facilities as an effective alternative to State correctional facilities while reducing recidivism rate by 5% by 2025."[53] Two strategies are listed, "Ensure compliance with basic jail guidelines" and "Increase the use of reception center functions to ensure appropriate housing assignments."[54]

Defendant LeBlanc was or should have been aware that MPCC did not have such a policy and practice, thereby placing every prisoner at MPCC, both sentenced and pre-trial, at a serious risk of harm.[55] MPCC does not have a classification policy or procedure that meets even these basic requirements.[56] The stated aim of the MPCC classification policy, which was in effect through the relevant time, was "to provide an offender work force to accomplish the maintenance

---

[50] Exhibit 1, Basic Jail Guidelines at 19-20.
[51] LeBlanc testified in July 2019 about his desire to use the strategic plan as a process to plan out what the department was doing, and meetings he had on the subject. Exhibit 3, 7/9/2019 Deposition of LeBlanc, 95:10-8; Exhibit 4, 1/7/2022 Deposition of LeBlanc, 95:5-17.
[52] Exhibit 5, Strategic Plan FY 2020-21 at 32.
[53] Exhibit 5, Strategic Plan FY 2020-21 at 32.
[54] Exhibit 5, Strategic Plan FY 2020-2021 at 32.
[55] ECF No. 27, ¶37-42.
[56] ECF No. 27, ¶33-35.

needs of the facility to the best extent possible."[57] The policy then states initial intakes are held in administrative segregation for 48 hours while an intake process is completed and then moved to general population. MPCC offers only three options for classifying prisoners and detainees – general population, trustee, and administrative segregation. The remainder of the policy defines minimum criteria for trustee status. There is functionally, no written classification policy at MPCC, and no classification policy or practice that satisfies the minimal requirements outlined in the Guidelines.[58]

Records obtained from MPCC strongly suggest that classification practice is as perfunctory as the policy would suggest. Although Murray had not been sentenced at the time of his arrival at MPCC, he was housed with people who had been sentenced.[59] On the unit where Murray was ultimately attacked, the three individuals involved had the same classification status as Mr. Murray, despite their sentenced status and significant disciplinary histories.[60] Further, quarterly reporting to the Department of Corrections from several facilities, including MPCC, document serious altercations between DPSC prisoners and other prisoners either documented as pre-trial detainees or people with unspecified statuses.[61] Despite these reports of actual harm befalling both sentenced and pre-trial people at local jails failing to follow Basic Jail Guidelines, DPSC annual monitoring failed to engage in any analysis of classification policies and procedures to determine

---

[57] Id.; Exhibit 6, MPCC Classification Policy.
[58] Exhibit 6, MPCC Classification Policy. Significantly, the only question reviewed by some of DPSC's annual monitoring focuses on the question of trustees, ECF No. 27, ¶31, and other audit reports approve MPCC's insufficient classification policy as complying with BJG's detailed requirements. Exhibit 7, MPCC Annual Monitoring Reports. Generally, these annual monitoring reports highlight the lack of oversight on corrections practice central to ensuring the safety of people held in local jails used by DPSC to house sentenced people. ECF No. 27, ¶48.
[59] ECF No. 27 at ¶¶49-52.
[60] ECF No. 27 at ¶¶60-64.
[61] ECF No. 27 ¶¶39-40; Exhibit 8, 2019 Q1 Reports, 2019 Q3 Reports, 2020 Q3 reports, 2020 Q4 reports. Assaults, particularly between sentenced and un-sentenced people, are likely underreported in quarterly reporting documents. The incidents that form the basis of this litigation were not reported on the relevant reports. Plaintiffs offer this limited reporting at several local jails in demonstration of the broader systemic nature of the problem, and that Defendant LeBlanc knew or should have known of it.

if the local facility was in compliance with the Basic Jail Guidelines' classification requirements.[62] Obvious and dangerous deficiencies in classification policy and practice appear to have gone entirely unmentioned in monitoring reports.

Taking Plaintiffs claims as true, as required at this stage, MPCC does not comply with BJG classification requirements, creating an intolerable risk of harm to people at MPCC including Plaintiffs.

Plaintiffs have pleaded, and will seek to adduce further evidence on all of the elements required to prove their claims against Defendant Leblanc, namely:

- Defendant LeBlanc is a policymaker for local jails housing sentenced people;

- Defendant LeBlanc knew or should have known that classification policy and practice  is an essential component of constitutionally adequate correctional facilities;

- Defendant LeBlanc knew or should have known that MPCC did not have a classification policy that complied with Basic Jail Guidelines or the Constitution;

- Defendant LeBlanc knew or should have known that MPCC did not have classification practices that complied with Basic Jail Guidelines or the Constitution;

- Defendant LeBlanc knew or should have known that sentenced and pre-trial individuals at local jails, including MPCC, were at risk of harm and being harmed by unconstitutional failures to classify individuals.

---

[62] ECF No. 27, ¶31, 48. The classification policies at each of the facilities with reported assaults between sentenced and pre-trial people were approved without comment in DPSC's 2018 and 2019 monitoring reports. Exhibit 9, Ouachita Annual Monitoring Reports; Exhibit 10, Franklin Annual Monitoring Reports, Exhibit 11, Tensas Annual Monitoring Reports; Exhibit 7, MPCC Annual Monitoring Reports.

Despite this actual and/ or constructive knowledge, Defendant LeBlanc continues to house sentenced people in facially unconstitutional conditions at MPCC, perpetuating serious risks of harm to both sentenced and un-sentenced people. This abdication of responsibility and failure to act resulted in serious harm to Plaintiffs and continues to present a serious risk of harm to them in violation of their constitutional rights.[63]

### c. Defendant LeBlanc is Not Entitled to Qualified Immunity.

Qualified immunity is not a talismanic defense. Instead, it simply requires the court to "perform a two-step inquiry: (1) whether, considered in the light most favorable to the plaintiff, the plaintiff has alleged facts that, if proven, would establish that the official violated his constitutional rights; and (2) whether the right was clearly established." [64] As discussed in detail above, Plaintiffs have sufficiently pleaded facts to defeat Defendant LeBlancs' claims of qualified immunity.

### i.      Plaintiffs have a clearly established Constitutional right to protection.

The Supreme Court has long acknowledged that when an individual's liberty has been restrained, the state acquires an affirmative duty to protect that individual.[65] For prisoners, this duty to protect includes a duty to protect from other prisoners.[66] This duty to protect has long specifically extended to ensuring an adequate classification system which, at a minimum, keeps separate sentenced and pre-trial people.[67]

---

[63] Plaintiff Murray is now a sentenced prisoner subject to DPSC's placement practices. Latavius Paschal and Antone Henderson both continue to face heightened risk of becoming subject to DPSC's placement practices.
[64] Boyd v. Stalder, No. CIV.A.03-1249-P, 2008 WL 2977363, at *2 (W.D. La. Aug. 1, 2008) (internal citations omitted).
[65] DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 109 S. Ct. 998, 1005-06 (1989).
[66] Johnson v. Johnson, 385 F. 3d 503, 524 (5thCir. 2004).
[67] See, supra, at 9-10; Jones v. Diamond, 636 F.2d 1364, 1374 (5th Cir. 1981), overruled by Int'l Woodworkers of Am., AFL-CIO & its Loc. No. 5-376 v. Champion Int'l Corp., 790 F.2d 1174 (5th Cir. 1986), citing McCray v. Sullivan, 509 F.2d 1332, 1334 (5th Cir. 1975), cert. denied, 423 U.S. 859 (1975); Gates v. Collier, 501 F.2d 1291, 1308-10 (5th Cir. 1974).

ii.    *Plaintiffs have sufficiently pleaded allegations that Defendant LeBlanc violated those rights*

As detailed <u>supra</u>, Defendant LeBlanc was objectively aware of the substantial risk of harm MPCC's inadequate classification policy and practice posed to sentenced and un-sentenced people but failed to take steps to abate that risk of harm. As a direct result, MPCC's lack of classification policy and practice was allowed to continue unchecked, giving rise to repeated attacks on Plaintiffs Murray, Paschal, and Henderson. Further, Plaintiffs Murray, Paschal, and Henderson remain at risk from the conditions Defendant LeBlanc has created at local jails housing sentenced people.

In the alternative, Plaintiff asks this Court to "defer its qualified immunity ruling and order limited discovery" for further clarification of the facts.[68]

### d. Discretionary Immunity Does Not Extend to Failures to Implement Policy.

The Eastern District of Louisiana has explained the two-step test require to evaluate the applicability of Discretionary Immunity Doctrine:

> The first step requires that the action at issue be discretionary. Conduct cannot be discretionary unless it involves an element of judgment or choice. Thus, immunity does not apply "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow."
>
> If there is no statutory, regulatory, or procedural policy directive dictating the employees' course of conduct, then the court proceeds to the second step of the test. The second step requires a court to "determine whether that judgment is of the kind that the discretionary function exception was designed to shield." The discretionary immunity statute was designed to protect governmental actions and decisions based on considerations of public policy. Thus, the statute immunizes a public entity or employee from suit "[o]nly if the discretionary act was grounded in social, economic, or political policy."[69]

---

[68] <u>Hinojosa v. Livingston</u>, 807 F.3d 657, 670 (5th Cir. 2015).
[69]<u>Mitchell v. City of New Orleans</u>, 184 F. Supp. 3d 360, 377–78 (E.D. La. 2016) (quoting <u>Commerce & Indus. Ins. Co. v. Grinnell Corp.</u>, 280 F.3d 566, 571 (5th Cir. 2002) (internal citations omitted).

The court goes on to note that discretionary immunity must be raised as an affirmative defense and the party raising bears the burden of proving the doctrine's applicability.[70] The court declined to extend this statutory immunity because "it is not apparent from the face of the pleadings that any discretion exercised by [Defendant] was grounded in social, economic, or political policy."[71]

This Court should similarly decline Defendant LeBlanc this immunity. Defendant LeBlanc simply asserts that the decision to contract for housing of sentenced prisoners with the Madison Parish Sheriff, and the oversight over that contract, are subject to discretionary immunity. Ensuring the constitutionality of facilities housing sentenced prisoners who are the responsibility of the Department is not a discretionary act because it is directed by the United States Constitution and attendant jurisprudence as well as state and federal statute.[72] Should this Court determine that Defendant LeBlanc was engaging in a discretionary act, Defendant LeBlanc has not explained how these decisions are grounded in social, economic, or political policy.

At each hurdle, Defendant LeBlanc's plea for discretionary immunity fails and Plaintiffs should be allowed to move forward into discovery on their state law claims.

e. **Should the Court Believe the Plaintiffs have Failed to State a Claim against Defendant LeBlanc in their Original and Amended Complaints, the Plaintiffs Requests Leave to File an Amended Complaint.**

If, despite these points, the Court determines that the Plaintiffs' Complaint has failed to plead a claim on which relief may be granted against Defendant LeBlanc, Plaintiffs requests the Court grant leave to file an Amended Complaint, pursuant to Federal Rule of Civil Procedure

---

[70] Id., citing White v. City of New Orleans, 806 So.2d 675, 677 (La.App. 4 Cir.2001); Johnson v. Orleans Par. Sch. Bd., 975 So.2d 698, 710 (La.App. 4 Cir.2008).
[71] Id.
[72] See supra at 9-10.

15(a)(2). Plaintiffs note that it would be an abuse of discretion to deny leave to amend in these circumstances.[73]

## IV.    Conclusion

Plaintiffs request that this Court deny Defendant's Motions to Dismiss under 12(b)(1) and 12(b)(6). In the alternative, Plaintiffs request an opportunity to amend to cure any deficiencies or engage in discovery to further investigate Defendant's invocation of the qualified immunity defense.

<div style="margin-left: 40%;">

Respectfully submitted,

/s/ Elizabeth Cumming
**ELIZABETH CUMMING (**Bar Roll No. 31685), T.A.
**EMILY WASHINGTON** (Bar Roll No. 34143)
**RODERICK AND SOLANGE MACARTHUR JUSTICE CENTER**
4400 S. Carrollton Ave.
New Orleans, LA 70119
Phone: (504) 620-2259
Fax: (504) 208-3133
elizabeth.cumming@macarthurjustice.org
emily.washingting@macarthurjustice.org

-AND-

/s/ Casey Denson
**CASEY ROSE DENSON** (Bar Roll No.33363)
**MERCEDES TOWNSEND** (Bar Roll No. 39054)
**CASEY DENSON LAW, LLC**
4601 Dryades Street
New Orleans, LA 70115
Phone: (504) 224-0110
Fax: (504) 534-3380
cdenson@caseydensonlaw.com
mtownsend@caseydensonlaw.com

</div>

---

[73] See, e.g. Public Health Equipment and Supply Co. v. Clarke Mosquito Control Products, Inc., 410 Fed. Appx. 738, 741 (5th Cir. 2010) (reversing where district court dismissed complaint under Rule 12(b)(6) without permitting opportunity to amend).