## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**JAMES MURRAY, ET AL.**                                    **CIVIL ACTION**

**VERSUS**                                                           **NO. 21-592-JWD-RLB**

**JAMES LEBLANC, ET AL.**

## ORDER

Before the Court is Plaintiffs' First Motion to Compel Discovery Responses from Madison Parish Sheriff Sammie Byrd and the LaSalle Defendants. (R. Doc. 68). The motion is opposed. (R. Doc. 78). Plaintiffs filed a Reply. (R. Doc. 50).

**I.      Background**

Plaintiffs commenced this action on October 15, 2021. (R. Doc. 1). The operative pleading in this action is the Third Amended Complaint (R. Doc. 64), which was filed in accordance with the district judge's ruling dismissing without prejudice all claims raised against Secretary James LeBlanc ("LeBlanc"). (R. Doc. 59). Plaintiffs represent that the Third Amended Complaint does not make "any material change" to any of the allegations involving Sheriff Byrd and the LaSalle Defendants (collectively, "Defendants").[1]

**A.      Allegations in the Third Amended Complaint**

A brief summary of the allegations in this action is warranted.[2] Plaintiffs in this case were all confined at Madison Parish Correctional Center ("MPCC"), which houses both sentenced and pre-trial prisoners from around the State of Louisiana. (R. Doc. 64 at 1; *see* R. Doc. 64 at 21-35).

---

[1] Plaintiffs identify the "LaSalle Defendants" as Arthur Anderson, Chris Stinson, Tommy Farmer, Steven Chase, Cantrell Guice, John Murray, Wendell Hughes, Edward McDowell, Jonathan Knox, Jonta Shepherd, Esco Tillman, and Robert Thornton.

[2] In dismissing all claims against Leblanc, the district judge provides a detailed summary of the allegations raised in the Second Amended Complaint. (*See* R. Doc. 59 at 1-10).

Plaintiffs allege that the following defendants are responsible for ensuring the safety of the individuals held at MPCC: (1) Lasalle Management, LLC ("Lasalle") (the privately-owned operator of MPCC); (2) LeBlanc (Secretary of the Louisiana Department of Public Safety and Corrections, or "DSPC"); and (3) Sheriff Byrd (the Sheriff of Madison Parish). (R. Doc. 64 at 1-2). Plaintiffs allege that they were pre-trial detainees while confined and attacked at MPCC and, after the attacks, were placed in "punitive lockdown conditions" where they were deprived of exercise and natural light. (R. Doc. 64 at 1; *see* R. Doc. 64 at 21-37).

Plaintiffs allege that the foregoing defendants "have allowed fatally dangerous conditions of confinement to flourish at MPCC," with each "aware that MPCC has no functional classification, investigation, or staff supervision in place" and each "aware that these conditions allow threat of serious injury from rampant violence to go unchecked." (R. Doc. 64 at 2). Plaintiffs maintain that, because of these conditions, they were stabbed and beaten by attackers who should not have been confined with them on the same unit. (R. Doc. 64 at 2).

Among other things, Plaintiffs allege that "Defendants knew of the levels of extreme violence at the facility, the lack of a classification plan, the lack of investigation and response to known drivers of violence, and the chronic understaffing, but nevertheless continued to operate the facility with minimal adjustments, including continuing to house sentenced DPSC prisoners in the facility, allowing an intolerable risk of harm to come to those held in Defendants' custody, including Plaintiffs." (R. Doc. 64 at 39). Plaintiffs further allege that "Defendants knew of the failure of individuals at MPCC to perform crucial duties, including failures to develop and implement a classification plan, failures to respond appropriately to imminent risks of harm by correctional officers under their supervision, and failures to investigate incidents of harm." (R. Doc. 64 at 39). Plaintiffs further allege that "Defendants failed to train, supervise, or discipline

2

individuals who engaged in these behaviors[, which] was a moving force behind the harm experienced by Plaintiffs." (R. Doc. 64 at 41).

Plaintiffs seek recovery for violation of their rights under the Fourteenth and Eight Amendments of the U.S. Constitution, for violation of their rights under the Louisiana Constitution's rights to due process and to be free of cruel and unusual punishment, and under the state law torts of intentional infliction of emotional distress and negligence. (R. Doc. 64 at 37-44). Plaintiffs bring a separate state law claim seeking recovery from the defendants' insurer, Old Republic Union Insurance Company. (R. Doc. 64 at 44-45). Plaintiffs pray for declaratory relief, injunctive relief, judgment against the defendants for the asserted causes of action, attorney's fees, and compensatory and punitive damages. (R. Doc. 64 at 41).

**B.     The Instant Discovery Dispute**

On August 26, 2022, Plaintiffs served 63 requests for production on Defendants. (R. Doc. 68-2). Plaintiffs agreed to extensions of the deadline to respond to these requests for production on the condition of rolling productions. (R. Docs. 68-3, 68-4). Plaintiffs represent that Defendants "have made three limited batches of discovery production" but those productions remain incomplete. (R. Doc. 68 at 2).

On October 28, 2022, and November 4, 2022, Defendants provided their "Preliminary & Partial Responses to Plaintiffs' First Request for Production of Documents." (R. Doc. 68-5; R. Doc. 68-6). There is no dispute that this written response was timely given the parties' stipulated extensions made pursuant to Rule 29 of the Federal Rules of Civil Procedure.

Plaintiffs represent that on November 7, 2022, counsel for the parties conferred in good faith regarding the outstanding discovery responses pursuant to Rule 37(a)(1) of the Federal Rules of Civil Procedure, but no subsequent productions, information, or privilege logs were

provided prior to filing the instant motion on November 22, 2022. (R. Doc. 68 at 2-3; R. Doc. 68-1 at 16). Plaintiffs now seek supplemental responses and productions with respect to Defendants' staffing and organizational structure (Requests for Production Nos. 1, 7, 8, 14, 15, 16, 17, 20, 27); employee management and discipline records (Request for Production No. 21, 23, 47.g); contracts for service (Request for Production No. 24); billing and hospitalization records (Request for Production Nos. 25, 26); training records (Request for Production Nos. 31, 32, 33); investigation, classification, and critical incident responses (Request for Production Nos. 34, 43, 45, 46, 47, 50, 51, 52, 53); disciplinary practices (Requests for Production Nos. 47, 48, 49); personnel files of named defendants (Request for Production No. 63); information regarding other prisoners (Request for Production Nos. 36, 57, 61); and information related to other LaSalle facilities (Request for Production Nos. 5-10, 19, 29, 60).

Since the filing of this motion, the Court has extended the non-expert discovery deadline from February 1, 2023 to June 2, 2023. (R. Doc. 84). The Court has also issued a Stipulated Protective Order for the Privacy of Protected Health Information. (R. Doc. 86).

## II.    Law and Analysis

### A.    Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P.

4

26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc*., 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

A party must respond or object to a request for production within 30 days after service of the discovery. *See* Fed. R. Civ. P. 34(b)(2)(A). This default date may be modified by stipulation between the parties. Fed. R. Civ. P. 29(b). If a party fails to respond fully to discovery requests made pursuant to Rule 34 in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel responses and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

### B. Defendants' Continued Search for Responsive Documents and Electronically Stored Information ("ESI")

Defendants agree that final responses are merited with respect to requests for productions to which Defendants initially responded that a diligent search for documents and information

was being made (*i.e.*, Request for Production Nos. 1, 7, 8, 14, 15, 16, 17, 20, 21, 27, 33, 47, 48, 49, 63). (R. Doc. 78 at 1-2). Defendants acknowledge that they have a duty to provide responsive documents and information with respect to these requests for production, noting that they "have produced more than 5,300 pages of documents in discovery and fully intend to provide other responsive documents that may be located" within the limits of their stated objections. (R. Doc. 78 at 2). Defendants assert, however, that the search for documents and information has been difficult given the change of management, personnel, and storage facilities. (R. Doc. 78 at 2).

Given the recent extension of the deadline to complete non-expert discovery, as well as the apparent difficulties in identifying and locating responsive documents and information, the Court will provide the Defendants with a date certain to complete their search for, and production of, responsive documents and information and any required privilege log.

Much of the information and communications sought by Plaintiffs will consist of electronically stored information ("ESI"). The only discussions regarding ESI in the parties' briefing, however, appears in Defendants' discussion of Request for Production No. 46, with Defendants suggesting that the "onus" to provide search terms should be placed on Plaintiffs, who appear to have "set traps for Defendants with vague terms." (R. Doc. 78 at 7-8).

The parties had a duty to discuss "any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced" in the development of their discovery plan. *See* Fed. R. Civ. P. 26(f)(3)(C). To the extent the parties did not develop a comprehensive plan regarding how ESI would be handled in discovery, that does not excuse Defendants from failing to conduct a diligent search for responsive documents and ESI.

A party resisting discovery of ESI based on undue burden must make a specific showing that "the information is not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). The responding party cannot simply refuse to search for ESI because the party conducting discovery has not provided search terms:

> A producing party generally has an obligation to collect and review ESI pursuant to its own search protocol . . . and to provide the requesting party with the names of custodians whose ESI was searched, date ranges for the searches, and any search terms applied. Such information is properly included in written responses to document requests pursuant to Rule 34's specificity requirements. . . . A producing party is usually in the best position to know where to find relevant documents. . . . If problems are found with the search, a requesting party can raise them afterwards.

*Brown v. Barnes & Noble, Inc.*, 474 F. Supp. 3d 637, 646 n.5 (S.D.N.Y. 2019); *see also* The Sedona Conference, *The Sedona Principles, Third Edition*, 19 Sedona Conf. J. 1, 52 (2018) ("Responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for . . . producing their own electronically stored information."); *AIDS Healthcare Found., Inc. v. City of Baton Rouge*, No, 17-229, 2018 WL 5259465, at *5 n.4 (M.D. La. Oct. 22, 2018) ("District courts within the Fifth Circuit have acknowledged that the Sedona Principles and related Sedona commentaries are the leading authorities on electronic document retrieval and production." (citation and internal quotation marks removed); *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, No. 13-373, ,2018 WL 276941, at *4 (M.D. La. Jan. 3, 2018) ("A responding party is generally entitled to select the custodians most likely to possess responsive information."); *Scott v. Mobilelink Louisiana, LLC*, No. 20-826, 2022 WL 3009111, at *5 n.2 (M.D. La. July 28, 2022) ("To be clear, the lack of an ESI protocol does not wholly negate Defendant's obligation to respond to a valid discovery request, even if electronically stored information might be responsive.").

Given the foregoing, and the apparent lack of any ESI protocol agreed upon by the parties notwithstanding their Rule 26(f) and Rule 37(a)(1) conferences, the Court will require Defendants to conduct searches for both responsive documents and ESI without further input from Plaintiffs.[3] At the time of production, Defendants must certify that they have conducted a diligent search and identify the efforts made to locate responsive documents and ESI, including custodians whose ESI was searched, date ranges for the searches, and any search terms applied. That said, Defendants need only search for and produce documents and ESI within the parameters set by the remainder of this Order.

### C.    Temporal Scope Limitations

Defendants have objected to various requests for production based on their temporal scope. In their opposition, Defendants argue that because none of the Plaintiffs was confined in MPCC prior to June 19, 2020, all documents subject to production should be limited to that date and, at most, a reasonable period before that date not to exceed two years. (R. Doc. 78 at 2-3). Defendants further argue that any documents or events after the Plaintiffs left MPCC have no relevance to this action. (R. Doc. 78 at 3).

It appears that the Plaintiffs were housed at MPCC between June 19, 2020 and sometime in early 2021. (*See* R. Doc. 64 at 21, 33). Plaintiffs suggest that Defendants agreed to produce documents from 2019 and 2020 (at least with respect to employee management / discipline records), with Plaintiff reserving the right to seek additional information at a later point. (R. Doc. 68-1 at 7).

Unless otherwise stated in this Order or further limited by the specific document request at issue, the Court will limit the temporal scope of responsive information to the times period of

---

[3] Nothing in this Order shall preclude the parties from conferring further with respect to strategies for locating and producing responsive documents and ESI.

January 1, 2019 through June 1, 2021. This general limitation of the temporal scope is consistent

with many of Plaintiffs' document requests, and strikes the proper balance in light of the claims

and defenses in this action.

### D. Information Regarding Other Prisoners (Request for Production Nos. 36, 57, 61)

Request for Production Nos. 36 and 61 collectively seek the inmate and related records

for 15 other inmates who were or are confined at MPCC. (*See* R. Doc. 68-2 at 17-18, 22).

Plaintiffs assert that the requested information is relevant to Plaintiffs' claim that Defendants'

"failure to investigate incidents, lack of disciplinary process, and lack of classification system

created a substantial risk of harm by allowing violence to flourish at MPCC unchecked." (R.

Doc. 68-1 at 13).

Request for Production No. 57 seeks the production of hospital "trip sheets" between July

1, 2019 and June 1, 2021. (R. Doc. 68-2 at 21). Plaintiffs assert that this information is relevant

because it would document injuries that evidence "the level of harm caused by the dangerous

levels of violence at MPCC." (R. Doc. 68-1 at 13).

Defendants raised various objections to these requests for production based on the scope

of discovery, the vagueness of the requests, and the protected privacy interests of third-party

inmates. (R. Doc. 68-6 at 18, 27, 29-30).

To the extent Defendants raised concerns regarding the exchange of protected health

information involving other prisoners, those issues are now moot given the entry of the

Stipulated Protective Order for the Privacy of Protected Health Information. (*See* R. Doc. 86).

Any protected health information produced in this action shall be governed by the terms of that

Stipulated Protective Order.

The remainder of Defendants' arguments raised in their opposition appear to be based on the lack of inclusion of these third-party inmates in the pleadings and the possibility that their records contain information not relevant to the time period at issue. (R. Doc. 78 at 4). Plaintiffs represent in support of their motion that inmates specifically named in Request for Production Nos. 36 and 61, although not named in the pleadings, "were on units with Plaintiffs and involved in the incidents alleged in the complaint." (R. Doc. 68-1 at 13). To the extent that assertion is contradicted by Defendants' records, that may be addressed by separate motion practice or by withholding that information and providing an explanation for why the information for a particular inmate is irrelevant. Otherwise, Defendants must produce the information sought for the time period of July 1, 2019 through June 1, 2021. This information falls within the scope of discovery for the reasons presented by Plaintiffs.

### E.    Information Regarding Other LaSalle Facilities (Request for Production Nos. 5-10, 19, 29, 60)

To the extent these requests for production, or any other requests for production, seek information related to LaSalle facilities other than MPCC, the Court concludes that while the information may have some attenuated relevance to the allegations in this action, the requests are not within the scope of discovery given that the information sought is not proportional to the needs of this case. Plaintiffs' complaint concerns the alleged acts and omissions of Defendants at a single facility – MPCC. To be clear, Plaintiffs have not alleged that the Defendants failed to understaff or respond to incidents at facilities other than MPCC. Defendants have no duty to respond to the extent any discovery seeks information regarding facilities owned or operated by LaSalle other than the facility at issue in this action.

It is unclear whether there are any remaining disputes with respect to these requests for production to the extent they seek information regarding MPCC. Any further production of

documents regarding MPCC responsive to these requests may be limited to the time period of January 1, 2019 through June 1, 2021. The parties must meet-and-confer with respect to any remaining disputes regarding these requests for production, as they apply specifically to MPCC, prior to the filing of any additional discovery motion pertaining to these discovery requests.

### F.    Staffing and Organizational Structure (Requests for Production Nos. 1, 7, 8, 14, 15, 16, 17, 20, 27)

Defendants indicate in their opposition that they do not object to the production of non-privileged documents responsive to Request for Production Nos. 7, 8, 14, 15, 17, and 27 within certain limitations discussed in the opposition. (R. Doc. 78 at 2, 5-6). Accordingly, by the deadline set by this Order, Defendants must produce all non-privileged documents responsive to these requests – or certify that no documents could be located notwithstanding a diligent search. As discussed above, the temporal scope of these requests is limited to January 1, 2019 through June 1, 2021 (unless the specific document request at issue provides a more limited time frame), and only information regarding MPCC must be produced.

Furthermore, with respect to Request for Production No. 7, Defendants must specifically include in their search specific records or logs that reflect "24-hour monitoring and coordinating" of the MPCC's "security, life safety and communication systems" from July 1, 2019 to June 1, 2021. (*See* R. Doc. 68-2 at 10). Defendants directed Plaintiffs to "Monthly Activity Reports provided to DPSC," but those documents do not appear to be fully responsive as they do not contain information reflecting 24-hour monitoring by staff. (R. Doc. 68-5 at 6; *see* R. Doc. 68-7). To the extent Defendants cannot locate, after a diligent search, responsive documents reflecting 24-hour monitoring, they may inform Plaintiffs that no documents were located.

Request for Production No. 1 seeks the production of "master staffing plans, including any and all documents or other records showing approved staffing" for MPCC "from July 1,

2019 through June 1, 2021." (R. Doc. 68-2 at 9). Defendants raised objections based on relevance and vagueness, noting that the request fails to define "master staffing plans." (R. Doc. 68-6 at 2). Defendants have clarified in their opposition that they "endeavor to provide documentation related to staffing at the facility, though such documentation is unlikely to contain anything titled 'master staffing plan.'" (R. Doc. 78 at 5). In accordance with this representation, the Court will require Defendants to produce all non-privileged documents response to Request for Production No. 1 (whether titled "master staffing plan" or not) after completing a diligent search.

The sole remaining dispute in this category pertains to Request for Production Nos. 16 and 20. These document requests seek, respectively, "documents reflecting the number of positions filled and the number of positions vacant for uniformed corrections officer positions" at MPCC "from February 1, 2020 through June 1, 2021," and "documents or other records reflecting the amount of overtime paid to uniformed staff for overtime worked . . by pay period, by month, and by quarter" at MPCC "from January 1, 2020 through June 1, 2021." (R. Doc. 68-2 at 11-12). In relevant part, Defendants objected to the requests as "overly burdensome" given that responses "would require the manual review" of all personal and payroll files to identify the information sought. (R. Doc. 68-6 at 6-7). Plaintiffs argue that the information sought should be contained "in a centralized administrative file" or similar summary documentation. (R. Doc. 68-1 at 5-6). Defendants respond that to the extent the information is not located in centralized files they would maintain their burdensomeness objection given that individualized reviews would be necessary. (R. Doc. 78 at 5-6).

While the documents and information sought in these document requests are relevant to Plaintiffs' claims, it remains unclear whether the discovery is proportional to the needs of this

case. Given the extension of the deadline to conduct a diligent search for responsive documents, the Court need not fully resolve this issue based on the motion now before it. The record indicates that Defendants are unsure whether responsive documentation could be found in a single located repository. On the other hand, Defendants do not describe with any particularly the burden imposed by prospective "individualized reviews" of employee files. To the extent Defendants maintain their objection of undue burden after a diligent search for responsive documents is conducted, they must provide Plaintiffs with an approximation of the time and costs that would be incurred to locate and produce the responsive documents. Furthermore, to the extent the production of employee files raises confidentiality concerns, the parties may address such issues through the entry of a protective order governing the exchange of confidential information.

> **G.    Employee Management and Discipline (Requests for Production Nos. 21, 23, 47.g.)**

Defendants indicate in their opposition that they do not object to the production of non-privileged documents responsive to Request for Production No. 21. (R. Doc. 78 at 2, 6). By the deadline set by this Order, Defendants must produce all non-privileged documents responsive to this request – or certify that no documents could be located notwithstanding a diligent search. As discussed above, the temporal scope of these requests is limited July 1, 2019 through June 1, 2021 as specified in the document request.

Request for Production No. 23 seeks production of "documents or other records reflecting criminal prosecution of any LaSalle Management staff . . . employed at any facility from January 1, 2014 to the present." (R. Doc. 68-2 at 13). Defendants objected based on irrelevance, disproportionality, and overbreadth: "the Request is overbroad both temporally, as it seeks information from dates both before and after the Plaintiffs' interactions with the facility at

issue, and in subject matter as it seeks information with no restrictions on relevance or

consideration as to the relevance of information over the entirety of the span of time covered, the

relevance of information from facilities in which the Plaintiffs were never held, and does not

limit itself in any way to criminal prosecution related to the allegations of the underlying

Complaint." (R. Doc. 68-6 at 9). Defendants maintain these objections in their opposition. (R.

Doc. 78 at 6).

Given that this discovery request seeks information reflecting criminal prosecutions,

which are subject to investigations and statutes of limitations, the Court will require Defendants

to conduct a diligent search for responsive information with respect to Request for Production

No. 23 from January 1, 2019 to the present. The Court will also limit the scope of the criminal

prosecutions to LaSalle personal at MPCC, but will require production of records pertaining to

criminal prosecutions regardless of whether they concern the underlying incidents.

Request for Production No. 47 seeks production of "documents pertaining to all

incidents, uses of force, disciplinary actions and altercations involving plaintiffs," with Request

for Production 47(g) specifically seeking " any disciplinary action taken against any corrections

officer related to the incident." (R. Doc. 68-2 at 19). Defendants objected to the request on as

outside of the scope of discovery, overly broad, and vague. (R. Doc. 68-8 at 23). Defendants now

argue that the request is too broad because it is not limited to "incidents" that have any bearing to

Plaintiffs' alleged injuries. (R. Doc. 78 at 6). Plaintiff states, however, that at the Rule 37

conference, Plaintiffs clarified that "the request was for documents pertaining to any incident any

of the three Plaintiffs experienced while at MPCC." (R. Doc. 68-1 at 11). The Court similarly

interprets Request for Production 47 (in its entirety) as seeking information related to incidents

involving the three Plaintiffs in this action. Defendants shall locate and produce these documents as requested, and as further discussed below.

### H.    Contracts (Request for Production No. 24)

Request for Production No. 24 seeks the production of "all contracts with third parties related to operations at [MPCC] in effect from January 1, 2014 to present," including contracts between the Madison Parish Sheriff's Office and the third-party Security Management. (R. Doc. 68-2 at 13). Defendants objected based on relevance and disproportionality, specifically objecting to the production of documents involving the third-party Security Management based on temporal overbreadth and its non-party status. (R. Doc. 68-6 at 10). In opposing the motion, Defendant again focuses on the temporal aspect of the request, Security Management's non-party status, and the lack of any allegations in the pleadings concerning Security Management. (R. Doc. 78 at 7).

The Court will limit the temporal scope of the instant request to contracts related to operations at MPCC in effect from January 1, 2019 through June 1, 2021. Defendants must make a diligent search for all responsive contracts in their possession, custody, or control during this time period. Any contract with Security Management entered into during this period by Sheriff Byrd falls within the scope of discovery.[4] To the extent the production of the third-party contract raises confidentiality concerns, the parties may address such issues through the entry of a protective order governing the exchange of confidential information.

### I.    Billing and Hospitalization Records (Request for Production Nos. 25, 26)

---

[4] Plaintiffs allege that "[a]s of May 31, 2021, Security Management has taken over operations at MPCC pursuant to a contract" with Sheriff Byrd. (R. Doc. 64 at 11 n.1).

Request for Production No. 25 seeks the production of "all policies and procedures regarding outside hospital billing for services to [MPCC] and LaSalle Management from July 1, 2019 to June 1, 2021." (R. Doc. 68-2 at 13). Request for Production No. 26 seeks the production of "all bills for medical service provided to James Murry, Latavius Paschal, and Antone Henderson sent by an outside hospital or medical provider while in custody of DPCS and/or LaSalle Management." (R. Doc. 68-2 at 14). Defendant agreed to provide responsive documents after conducting a diligent search. (R. Doc. 68-6 at 10).

In opposing Plaintiffs' motion, Defendants raise no arguments regarding these requests for production. Accordingly, the Court will require Defendants to respond to the requests as stated within the deadlines provided by this Order.

**J.**    **Training Records (Request for Production Nos. 31, 32, 33)**

Request for Production No. 31 seeks the production of "all documents and other records pertaining to orientation training of LaSalle Management staff at any and all facilities operated by LaSalle Management located in Louisiana used to hold pretrial detainees and people in DPSC custody, in effect from January 1, 2014 onward." (R. Doc. 68-2 at 14-15). Request for Production No. 32 seeks the production of "all documents and other records pertaining to in-service training of LaSalle Corrections staff at any and all facilities operated by LaSalle Management located in Louisiana used to hold pretrial detainees and people in DPSC custody, in effect from January 1, 2014 onward." (R. Doc. 68-2 at 15-16). Request for Production No. 33 seeks the production of "all policies and procedures in effect from January 1, 2019 onward regarding prisoner classification, responses to prisoner reports of threats, investigation of reports of threats, [and] observation and supervision of prisoner housing units." (R. Doc. 68-2 at 16).

16

Defendants objected to Request for Production Nos. 31, 32, and 33(b) based on relevance and disproportionality with respect to the temporal scope of the requests, the inclusion of facilities in which Plaintiffs were never held, but agreed to produce responsive documents after a diligent search was completed without waiving these objections. (R. Doc. 68-6 at 13-15). Defendants also produced certain logs as responsive to Request for Production No. 33(a), raising similar objections. (R. Doc. 68-5 at 8). Defendants also objected to Request for Production No. 33 as vague to the extent it used the phrase "signs of increasing tension" in its subsections. (R. Doc. 68-5 at 8; R. Doc. 68-6 at 5).

The Court finds it appropriate to limit the temporal scope of these requests to January 1, 2019 to June 1, 2021. This will allow for the discovery of training documents and policies and procedures in place while the Plaintiffs were incarcerated, as well as materials immediately before and after the Plaintiffs were incarcerated. This temporal limitation strikes the proper balance with respect to relevance and proportionality. To the extent this time period includes documents or information related to the management of the facility by an entity other than LaSalle, including Security Management, the Court nevertheless finds that the documents fall within the scope of discovery.

As discussed above, the Court will also limit the scope of discoverable information to those training documents and policies and procedures in place at MPCC. Documents pertaining to other LaSalle facilities are neither relevant nor proportional to the needs of this case.

### K.    Investigation, Classification, and Critical Incident Responses (Request for Production Nos. 34, 43, 45, 46, 47,[5] 50, 51, 52, 53)

Request for Production No. 34 seeks "all policies and procedures regarding post-critical incident reviews, re-training, meetings, discussions in effect from January 1, 2019 onward." (R.

---

[5] The Court addresses Request for Production No. 47 in Sections II(G), II(L).

Doc. 68-2 at 16). Defendants objected based on relevance, proportionality, and temporal

overbreadth. (R. Doc. 68-6 at 16). Plaintiffs do not specifically address this document request in

their motion. In opposition, Defendants state that the request must be limited because "Plaintiffs

again seek documents beyond any time period that could be considered relevant to their claims."

(R. Doc. 78 at 7).

Request for Production No. 43 seeks "all policies and procedures for tracking, reporting

and responding to critical incidents, suspicious injuries, observed altercations, [and] reports of

altercations among prisoners from January 1, 2019 to present." (R. Doc. 68-2 at 18). Defendants

objected based on relevance, proportionality, and temporal overbreadth, noting that they had

previously produced a document (MCC Classification Policy eff. 5.14 signed (MCCC P1)) as

responsive to this request. (R. Doc. 68-6 at 21). Plaintiffs state that the produced Classification

Policy "does not provide for reporting, incident tracking, [and] investigation in response to

incidents" as sought. (R. Doc. 68-1 at 10). Defendants do not specifically address this document

request in its opposition.

Request for Production No. 45 seeks "all documents pertaining to policy, procedure and

practice investigation incident reports and/or reports of prisoner altercations and/or violence

from January 1, 2019 to present." (R. Doc. 68-2 at 19). Defendants objected based on relevance,

proportionality, and temporal overbreadth. (R. Doc. 68-6 at 22). Neither party specifically

discusses this document request in their filings.

Request for Production No. 46 seeks "all documents, policies, procedures, meeting

minutes, emails, or other records pertaining to any housing unit assignment plan, identification of

classification designations, identification of housing populations, and/or the creation of any unit

specifically designed to hold pre-trial people." (R. Doc. 68-2 at 19). Defendants objected based

on relevance, proportionality, temporal overbreadth, and vagueness with respect to the terms and phrases "housing unit assignment plan," "classification designations," and "unit specifically designed to hold pre-trial." (R. Doc. 68-6 at 22). In support of their motion, Plaintiffs clarify that their "request is for anything related to classification, all of which is directly relevant to Plaintiffs' claim that MPCC did not have any classification system in place creating a substantial risk of harm." (R. Doc. 68-1 at 10). Defendants respond that they have not conducted searches for ESI given that Plaintiffs have not supplied any appropriate search terms. (R. Doc. 78 at 7-8).

Request for Production Nos. 50 and 51 collectively seek all documents pertaining to policies, procedures and practices of "escorting prisoners for medical care after altercation with another prisoner" or "for routing prisoners to the hospital or any other provider for outside care." (R. Doc. 68-2 at 20). Defendants objected to these requests based on relevance and disproportionality with respect to the temporal scope of the requests and the lack of any limitation to the claims made in the pleadings. (R. Doc. 68-6 at 25-26). Noting that "DOC regulations and/or Louisiana substantive law provide certain responsibilities regarding discipline of inmates/detainees," Defendants nevertheless agreed to produce responsive documents after a diligent search (R. Doc. 68-6 at 25-26). In their opposition, Defendants reassert their objections related to the temporal scope of the requests. (R. Doc. 78 at 8).

Request for Production No. 52 seeks the production of "all documents reflecting shakedowns from January 1, 2019 to present." (R. Doc. 68-2 at 20). Defendants objected based on relevance, proportionality, and temporal overbreadth, but agreed to produce documents after a diligent search. (R. Doc. 68-6 at 26). In their opposition, Defendants reassert their objections related to the temporal scope of the requests, as well as to the extent it is not limited to the MPCC. (R. Doc. 78 at 8).

Request for Production No. 53 seeks the production of "all documents pertaining to contraband from January 1, 2019 to present." (R. Doc. 68-2 at 20). Defendants objected based on relevance, proportionality, and temporal overbreadth, but agreed to produce documents after a diligent search, and directed Plaintiffs to "Monthly Activity Reports provided to DPSC." (R. Doc. 68-5 at 10). In support of their motion, Plaintiffs argue that the Monthly Activity Reports are only "partially responsive" to the request because they "do not include any information related to investigations, disciplinary actions, or criminal charges." (R. Doc. 68-1 at 10). In their opposition, Defendants reassert their objections related to the temporal scope of the requests, as well as to the extent it is not limited to the MPCC. (R. Doc. 78 at 8).

The Court finds it appropriate to limit the temporal scope of Request for Production Nos. 34, 43, 45, 46, 50, 51, 52, and 53 to January 1, 2019 to June 1, 2021. This will allow for the discovery of policies and procedures in place while the Plaintiffs were incarcerated, as well as materials immediately before and after the Plaintiffs were incarcerated. This temporal limitation strikes the proper balance with respect to relevance and proportionality. To the extent this time period includes documents or information related to the management of the MPCC by an entity other than LaSalle, including Security Management, the Court nevertheless finds that the documents fall within the scope of discovery. The requests are limited, however, to documents and information pertinent to MPCC.

Finally, Defendants must collect and produce responsive ESI in conformity with the terms of this Order discussed above.

### L.    Disciplinary Practices (Request for Production Nos. 47, 48, 49)

Request for Production No. 47 seeks production of "documents pertaining to all incidents, uses of force, disciplinary actions and altercations involving plaintiffs." (R. Doc. 68-

20

6). As discussed above, the Court interprets this request in its entirety as seeking information related to incidents involving the three Plaintiffs in this action. Defendants indicate in their opposition that they "intend to provide responsive documents to that request as narrowed by the parties." (R. Doc. 78 at 8). Defendants shall conduct a reasonable search and produce responsive documents as agreed upon.

Request for Production No. 48 and 49 collectively seek production of all documents pertaining to the policies, procedures, and practices of "issuing disciplinary 'write-ups'" and "of placing prisoners in administrative segregation or 'lock-down.'" (R. Doc. 68-2 at 19-20). Defendants objected to these requests based on relevance and disproportionality with respect to the temporal scope of the requests and the lack of any limitation to the claims made in the pleadings. (R. Doc. 68-6 at 24-25). Noting that "DOC regulations and/or Louisiana substantive law provide certain responsibilities regarding discipline of inmates/detainees," Defendants nevertheless agreed to produce responsive documents after a diligent search. (R. Doc. 68-6 at 24-25). In opposing this motion, Defendants state that they "intend to provide responsive documents regarding those requested policies at MPCC at the time the Plaintiffs were held there, unless otherwise compelled by the Court." (R. Doc. 78 at 9).

The Court finds it appropriate to limit the temporal scope of these requests to January 1, 2019 to June 1, 2021. This will allow for the discovery of disciplinary practices in place while the Plaintiffs were incarcerated, as well as materials immediately before and after the Plaintiffs were incarcerated. This temporal limitation strikes the proper balance with respect to relevance and proportionality. To the extent this time period includes documents or information related to the management of the facility by an entity other than LaSalle, including Security Management, the Court nevertheless finds that the documents fall within the scope of discovery.

M.      **Personnel Files of Named Defendants (Request for Production No. 63)**

Request for Production No. 63 seeks the production of "employment records" for each of the individual defendants at issue "related to their employment at [MPCC], Madison Parish Sheriff's Office and/or with LaSalle Management." (R. Doc. 68-2 at 22-23). Defendants agreed to search for and provide the sought personal information (with appropriate redactions if necessary). (R. Doc 68-6 at 32).

In opposing Plaintiffs' motion, Defendants raise no arguments regarding these requests for production. Accordingly, the Court will require Defendants to respond to the requests as stated within the deadlines provided by this Order. Defendants must provide an accompanying privilege log to the extent any responsive documents are redacted or withheld as privileged.

## III.    Conclusion

Based on the foregoing,

**IT IS ORDERED** that Plaintiffs' First Motion to Compel Discovery Responses from Madison Parish Sheriff Sammie Byrd and the LaSalle Defendants (R. Doc. 68) is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that **on or before March 24, 2023**, Defendants shall produce supplemental discovery responses and productions consistent with the body of this Order. At the time of production, Defendants must certify that they have conducted a diligent search and identify the efforts made to locate responsive documents and information.

Signed in Baton Rouge, Louisiana, on February 15, 2023.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**