UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| JAMES MURRAY, et al<br>Plaintiffs<br><br>V.<br><br>JAMES LEBLANC, SECRETARY OF DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, et al.<br>Defendants | *<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Civil Docket Number:<br>3:21-cv-592-JWD-RLB<br><br>JUDGE:<br>JOHN W. DEGRAVELLES<br><br>MAGISTRATE:<br>RICHARD L. BOURGEOIS |

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' SECOND MOTION TO ENFORCE THIS COURT'S ORDER TO
COMPEL DISCOVERY RESPONSES FROM
MADISON PARISH SHERIFF SAMMIIE BYRD AND LASALLE DEFENDANTS**

Plaintiffs, through undersigned counsel, respectfully move this Court to enforce its Order Compelling Production of Discovery from Defendant Madison Parish Sheriff Sammie Byrd and Defendants Arthur Anderson, Chris Stinson, Tommy Farmer, Steven Chase, Cantrell Guice, John Murray, Wendell Hughes, Edward McDowell, Jonathan Knox, Jonti Shepherd, Esco Tillman, and Robert Thornton (hereinafter "LaSalle Defendants").[1]

I. **Procedural Background**

On February 15, 2023 this Court partially granted Plaintiffs First Motion to Compel Discovery Responses from Madison Parish Sheriff Sammie Byrd and LaSalle Defendants.[2] The Court limited the temporal scope of Plaintiffs requests from January 1, 2019 to June 1, 2021 and limited the ordered production to documents pertaining to MPCC but within this scope found that Plaintiffs Requests for Production related to the following areas were discoverable:

Information regarding Other Prisoners (36, 57, 61)

---
[1] ECF No. 90.
[2] ECF No. 90.

1

Staffing and Organizational Structure (1,7,8,14,15,16,17,20,27)

Employee Management and Discipline (21,23,47.g)

Contracts (24)

Billing and Hospital Records (25, 26)

Training Records (31, 32, 33)

Investigations, Classification, and Critical Incident Responses (34, 43, 45, 46, 50, 51, 52, 53)[3]

Disciplinary Practices (47, 48, 49)

Personnel Files of Named Defendants (63)

Defendants made a limited discovery production on March 24, 2023, but failed to state whether documents did not exist and failed to produce all documents held by this Court to be within the scope of discovery.[4] Although Defendants failed to meet the Court's deadline for production, they began providing some discovery weekly. On May 16, 2023, this Court granted Defendant LeBlanc and Defendant Smith's motion to stay discovery.[5] Although LaSalle Defendants were under a pre-existing order to produce discovery, they took the position that the Court's motion to stay extended to their belated efforts to produce discovery that was already nine months overdue. Plaintiffs moved to enforce the Defendants' obligation to produce outstanding discovery as an order that existed prior to the entry of the stay. Even after the Court denied Smith and LeBlanc's motion to dismiss, obviating the need for the stay, LaSalle Defendants continued to refuse to honor their obligations to produce outstanding discovery.[6] Plaintiffs filed a supplemental memorandum to their motion to enforce the compel, which this

---

[3] ECF No. 90 at 20.
[4] ECF No. 105-3.
[5] ECF No. 102.
[6] ECF No. 105-1 at 3.

Court granted in part giving LaSalle Defendants until October 10, 2023 to produce all outstanding discovery.[7] Defendants have made additional production on October 10, 2023, but still outstanding discovery remains.[8]

Counsel for Plaintiffs and LaSalle Defendants conferred on October 19, 2023 to discuss outstanding discovery. Defendants have made two additional productions of discovery since that time consisting of outstanding critical incident reports. But twelve days later, LaSalle Defendants have still not produced outstanding discovery items, have not provided information regarding further efforts to locate additional outstanding items, and have not definitively stated that certain items simply do not exist.

II. **Outstanding Discovery**

- **RFP 1, 7, 14, 15, 16: Staffing Records**

Plaintiffs requested documents reflecting approved staffing and staffing deployment. Defendants have stated that they do not have responsive records, but that they were continuing to review ESI to determine if responsive records existed.[9]

In the course of depositions taken in April and May 2023, multiple defendants and witnesses testified that staff deployments and staff attendance for each shift were documented on "drop sheets" which would be responsive to these requests related to staffing.[10] Several of the witnesses testified that these "drop sheets" were sent as email attachments to various ranking staff members at MPCC or were maintained in file boxes placed in storage.[11]

---

[7] ECF No. 110.
[8] Exhibit 1, October 2023 Supplemental Responses
[9] ECF No. 105-3.
[10] Exhibit 2, Deposition of Tommy Farmer at 82:18-83:8; Exhibit 3, Deposition of Cantrell Guice at 132:23-133:5; Exhibit 4, Deposition of John Murray at 128:15-25.
[11] Exhibit 5, Deposition of Steven Chase at 54:9-13; Exhibit 2, Deposition of Tommy Farmer at 59:19-60:11.

On October 10, 2023, LaSalle Defendants produced some staffing rosters, but rosters for 6/13/2020 to 7/1/2020 and 7/9/2020 to 8/12/2020 remain outstanding. In addition, LaSalle Defendants have produced some "drop sheets" which had been located in a warehouse, but to date Defendants have not provided "drop sheets" for July 1, 2019 to June 12, 2020; June 13-16, 2020; June 20 to June 22, 2020; June 25, 2020 to July 7, 2020; July 9, 2020 to August 8, 2020; September 21 – October 4, 2020; October 5, 2020 to October 9, 2020; October 11, 2020 to October 20, 2020; November 19, 2020 to May 3, 2021; May 10, 2021 to June 1, 2021. The missing drop sheets include days when Plaintiffs were held in dorms where they were attacked and the specific days of the various attacks. These "drop sheets" are critical evidence in establishing the chronic understaffing that contributed to the widespread violence at MPCC.

Despite testimony from Major Chase and others, LaSalle Defendants have still not searched ESI for drop sheets or other staffing information.[12] Counsel for Plaintiffs and LaSalle Defendants had a conference on October 19, 2023 during which they discussed need for further searches of ESI to locate responsive production. That same day, counsel for Plaintiffs emailed LaSalle Defendants pointing to the place in the Major Chase's deposition where he reported that the shift pack was emailed and requesting additional searches of ESI to capture responsive information.[13] Twelve days later and over two weeks after the Court's deadline to produce discovery, Defendants have still not provided complete information and have failed to look in the location it is likely to be, based on Defendant deposition testimony.

Plaintiffs request this Court order Defendants to allow Plaintiffs to conduct their own search of Defendants' ESI and any warehouses where physical files may be located, witnessed by counsel for Defendants to determine whether responsive documents exist. If no responsive

---

[12] ECF No. 105-3 at 1-3.
[13] Exhibit 6, October 19, 2023 email from Elizabeth Cumming to Eli Meaux.

documents are found after such a search, Defendants must offer a definitive statement that these documents never existed or that they have failed to preserve these documents.

- **RFP 17: Organizational Structure**

Contrary to this Court's order Defendants continue to hedge regarding the existence of documentation of an organizational chart by indicating that such a document may exist in ESI. To date no documentation relating to organization structure has been produced nor have Defendants stated definitively that no such documentation exists.

Plaintiffs request this Court order Defendants to allow Plaintiffs to conduct their own search of Defendants' ESI and any warehouses where physical files may be located, witnessed by counsel for Defendants to determine whether responsive documents exist. If no responsive documents are found after such a search, Defendants must offer a definitive statement that these documents do not exist and / or Defendants have failed to preserve these documents.

- **RFP 21: Reports and summary data related to staff attrition, promotions, demotions, and departures**

Contrary to this Court's order Defendants continue to hedge regarding the existence of documentation of promotions, demotions, attrition and departures indicating that such a document may exist in ESI. To date some limited documentation related to specific personnel files have been provided, but no documentation relating to summary reports responsive to these requests have been provided nor have Defendants stated definitively that no such documentation exists.

Plaintiffs request this Court order Defendants to allow Plaintiffs to conduct their own search of Defendants' ESI and any warehouses where physical files may be located, witnessed by counsel for Defendants to determine whether responsive documents exist. If no responsive

documents are found after such a search, Defendants must offer a definitive statement that these documents do not exist and / or Defendants have failed to preserve these documents.

- **RFP 46: Classification**

Again, contrary to this Court's order, Defendants' hedge their statements that no such documents exist based on ESI Defendants have not reviewed. The Court directed Defendants to collect and produce responsive ESI in February 2023. Although Plaintiffs have been requesting census information related to inmate censuses on the dorms where Plaintiffs were held and classification designations since August 2022, Defendants only recently produced an Archived Inmate Census suggesting the ability to generate a census of inmates from a prior date reflecting legal states (pre-trial or sentenced) and housing location. For example, the produced archived census appears to have been run in January 2020 for a date in November 2019.[14]

During the meet and confer on October 19, 2023, counsel for Plaintiffs requested that searches for archived census be run, but Counsel for Defendants has not yet undertaken to do so. Counsel for Defendants noted that the MPCC facility was no longer under LaSalle management and was unsure if the ability to run searches for archived censuses remained at MPCC or under control of LaSalle. In follow up email that same day, Plaintiffs requested LaSalle Defendants clarify their position related to running searches for archived censuses, but received no response.

On October 24, 2023 Plaintiffs advised Defendants and maintain here that for purposes of discovery, whether LaSalle maintains control of the software used to search for archived censuses or the software remains at MPCC, named Defendants continue to have possession, custody and control of the software.[15] Tommie Farmer, Cantrell Guice, Edward McDowell, and Wendell Hughes all continue to work at MPCC as supervisors and policy makers who would

---

[14] See Exhibit 7, Archived Census.
[15] Exhibit 6, October 24, 2023 email from Elizabeth Cumming to Eli Meaux.

have access to and authority to conduct such a search. These Defendants have a sufficient level of control and access to any software still at MPCC that could run searches for archived censuses to allow the Court to enforce the order to compel Defendants to produce the policies to Plaintiffs. Fed. R. Civ. Pro. 34 and its jurisprudence requires only that a party have either (1) actual possession; (2) the legal right to obtain the responsive documents; or (3) the practical ability to obtain the documents.[16]

Additionally, Captain McDowell offered testimony about policies, procedures, and checklists related to classification from the Louisiana Department of Public Safety and Corrections.[17] Plaintiffs have repeatedly requested this information be produced as responsive to both Requests for Production 29, 33 and 46, but to date this information has not been provided. As McDowell testified, these policies have not changed and remain in his possession.

Plaintiffs request this Court order Defendants to allow Plaintiffs to conduct their own search of Defendants' ESI and any warehouses where physical files may be located, witnessed by counsel for Defendants to determine whether responsive documents exist. If no responsive documents are found after such a search, Defendants must offer a definitive statement that these documents never existed or they have failed to preserve these documents.

- **RFP 48, 49: Disciplinary Policies and Administrative Segregation Logs**

In their March 24, 2023 responses, Defendants indicated that they were seeking to locate disciplinary policies. Deposition testimony from witnesses and defendants indicated that DOC

---

[16] Commerce & Indus. Ins. Co., 97-0775, 2001 WL 96377, at *3 (emphasis added). The jurisprudence interpreting Fed. R. Civ. Pro. 34 does not contemplate the authorization or consent of the non-party but only whether the producing party does in fact have either actual possession, a legal right of access, or practical access to the requested documents. See e.g., Benson v. Rosenthal, CV 15-782, 2016 WL 1046126, at *4 (E.D. La. Mar. 16, 2016).
[17] Exhibit 8, Deposition of Edward McDowell at 81:10-83:10.

policies and practices related to disciplinary procedures where within the possession and control of LaSalle Defendants. To date, no policies have been produced.

In addition, LaSalle defendants have produced some Administrative Segregation Logs, but logs for June 13, 2020 to June 18, 2020; June 20, 2020 to August 8, 2020; September 21 – October 31, 2020; November 2, 2020 to November 14, 2020; November 16, 2020 to June 1, 2021. Missing logs include the dates when Plaintiffs were held at MPCC and the dates they were moved onto and off of administrative segregation. To best of Plaintiffs understanding, these logs were found in a box with the drop sheets and in some cases attached to drop sheets, suggesting they might also be emailed with drop sheets.

Further, Defendants have failed to produce responsive documents to Plaintiffs' requests for disciplinary policies and procedures.

Despite testimony from Major Chase and others regarding the number of documents circulated as attachments to email, LaSalle Defendants have not searched ESI for administrative segregation logs or disciplinary policies and procedures. Counsel for Plaintiffs and LaSalle Defendants had a conference on October 19, 2023 during which the need for searches of ESI was discussed. That same day, counsel for Plaintiffs emailed LaSalle Defendants requesting additional searches of ESI to capture responsive information.[18] Defendants have still not provided complete information and have failed to look in one of the locations the information is likely to be, based on Defendant deposition testimony.

Plaintiffs request this Court order Defendants to allow Plaintiffs to conduct their own search of Defendants' ESI and any warehouses where physical files may be located, witnessed by counsel for Defendants to determine whether responsive documents exist. If no responsive

---

[18] Exhibit 6, October 19, 2023 email from Elizabeth Cumming to Eli Meaux.

documents are found after such a search, Defendants must offer a definitive statement that these documents do not exist and / or Defendants have failed to preserve these documents.

- **RFP 31, 32, 33: Documents relating to in-service training, critical incident reporting, housing unit supervision and classification**

Defendants have still not produced documents related to any training offered by LaSalle for any in-service training, including classification, supervision of housing units, or critical incident reporting and review.

Plaintiffs request this Court order Defendants to allow Plaintiffs to conduct their own search of Defendants' ESI and any warehouses where physical files may be located, witnessed by counsel for Defendants to determine whether responsive documents exist. If no responsive document are found after such a search, Defendants must offer a definitive statement that these documents never existed and / or that they have failed to preserve these documents.

- **RFP 34, 43, 45, 47, 48, 50, 51, 52, 43: Documents relating to investigations, classification, and disciplinary actions after critical incidents**

Defendants have now produced a number of critical incident reports for 2019, 2020 and 2021, but a number remain missing based on the critical incident logs provided. As noted in the prior motion to enforce, the Critical Incident Report Policy produced by Defendants, all critical incident reports are to be sent via email to a central address, suggesting these materials should exist in electronically stored or digital format.[19] To date, although Defendants have provided additional critical incidents, they have failed to produce all missing critical incident reports according to Critical Incident Logs provided to Plaintiffs. Specifically, no critical incident reports for January through August 2019 have been provided, and only two critical incident reports have been provided for September 2019. Over twenty critical incident reports are missing for June 2020, four

---

[19] ECF No. 105.

are missing for July 2020, five are missing for August 2020, two are missing for September 2020, eighteen are missing for December 2020, the February 2021 critical incident log and reports are missing, and two are missing for January 2021 and April 2021 respectively.

Plaintiffs request this Court order Defendants to allow Plaintiffs to conduct their own search of Defendants' ESI and any warehouses where physical files may be located, witnessed by counsel for Defendants to determine whether responsive documents exist. If no responsive document are found after such a search, Defendants must offer a definitive statement that these documents do not exist and / or Defendants have failed to preserve these documents.

- **RFP 63: Personnel Records**

Defendants have failed to provide personnel records for Defendant Steven Chase. Plaintiffs request that this Court order Defendants to produce these responsive documents or offer a definitive statement that Defendants have failed to preserve these documents.[20]

Plaintiffs request that this Court order Defendants to allow Plaintiffs to conduct their own search of Defendants' ESI and any warehouses where physical files may be located, witnessed by counsel for Defendants to determine whether responsive documents exist. If no responsive document are found after such a search, Defendants must offer a definitive statement that these documents do not exist and / or Defendants have failed to preserve these documents.

III. **Requests for Sanctions against Defendants and an Order to Pay Fees and Costs**

Defendants failure to produce documents that have been requested for over a year, and their flagrant violation of two of this Court's orders – the directive to produce all outstanding discovery on March 24, 2023 and on October 10, 2023 – have occupied this Court's resources and the

---

[20] Exhibit 1, October 2023, Supplemental Responses.

resources of Plaintiffs' counsel. This Court's recourse against recalcitrant parties in discovery is outlined in Fed. R. 37(b):

> A) *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent … fails to obey an order to provide or permit discovery … the court where the action is pending may issue further just orders. They may include the following:
>
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Thus, this Court has authority to find LaSalle's officers, directors, and managing agents in contempt for failing to comply with this Court's directive to produce discovery, and to order Defendants to produce outstanding discovery on an expedited timeline. Plaintiffs request that this Court use its authority to do so. Further, as this Court's orders have not compelled Defendants to action, Plaintiffs request that caches of physical and electronically stored documents Defendants have failed to timely or adequately search be made available to Plaintiffs for inspection to determine if unproduced responsive documents may be located.

Further, pursuant to Rule 37(a)(5), Plaintiffs request this Court grant an award of reasonable attorney's fees for time spent preparing the initial motion to compel, time spent identifying outstanding documents (including through portions of depositions), time spent

identifying document production and maintenance practices, and time spent preparing the instant motion.[21]

## IV. **Conclusion**

Accordingly, Plaintiffs respectfully request that this Court 1) find Byrd and LaSalle's officers in contempt of court for failing to comply with this Court's order to produce discovery, 2) order Byrd and LaSalle Defendants to allow Plaintiffs access to inspect and search of all physical and electronic locations where responsive documents may be located, and 3) order Byrd and LaSalle Defendants to provide a statement that any document not identified and produced within one week of entry of this Order or within one week of Plaintiffs' inspection of all document locations that such documents either never existed or that LaSalle failed to preserve documents, and 4) finally order Byrd and LaSalle Defendants to pay reasonable attorney's fees and costs associated with Defendants violations of discovery process and this Court's orders.

        Respectfully submitted,

        /s/ Elizabeth Cumming
        **ELIZABETH CUMMING** (Bar Roll No. 31685), T.A.
        **EMILY WASHINGTON** (Bar Roll No. 34143)
        Roderick and Solange MacArthur Justice Center
        4400 S. Carrollton Ave.
        New Orleans, LA 70119
        Phone: (504) 620-2259
        Fax: (504) 208-3133
        elizabeth.cumming@macarthurjustice.org
        emily.washingting@macarthurjustice.org

Date: October 31, 2023

---

[21] Lysne v. Louisiana Windows & Doors, L.L.C., No. CV 17-1612-BAJ-RLB, 2018 WL 5831258, at *2 (M.D. La. Nov. 6, 2018) (ordering defendants to pay reasonable attorney's fees with the parties to attempt to resolve the amount of fees amongst themselves, and failing resolution allowing Plaintiffs fourteen days to file for fees and costs with requisite evidentiary support); Sabree v. Whelan Sec. Co., No. CV 17-1100-BAJ-RLB, 2019 WL 511837, at *2 (M.D. La. Feb. 8, 2019) (accord); Wright v. Bd. of Commissioners of Cap. Area Transit Sys., No. CV 20-644-SDD-RLB, 2022 WL 266070, at *3 (M.D. La. Jan. 14, 2022)(accord).