# SERVICES AGREEMENT

## BETWEEN

# MADISON PARISH LAW ENFORCEMENT DISTRICT

## AND

# SECURITY MANAGEMENT, LLC

This Agreement shall be effective as of June 1, 2021

## SERVICES AGREEMENT

THIS AGREEMENT, is entered into by and between the Madison Parish Law Enforcement District, Louisiana (the "District"), represented by Sammie Byrd, Sheriff of Madison Parish, who is duly authorized to act herein, and Security Management, LLC ("SM"), a Louisiana Limited Liability Corporation, represented by Jack M. Varner, III, Managing Member, who is duly authorized to act herein. WHEREAS, SM is in the business of providing services to prisons, including management of prison operations, facilities maintenance; locating state and federal prisoners for prisons; advising and consulting with respect to the operations of prisons in general; administrations of commissary services; budgeting for the operations of prisons; cash and financial services for prisons; negotiating for the placement of state and federal prisoners in prisons; serving as a liaison between prisons and governmental entities concerning the foregoing; negotiating for, obtaining and maintaining goods and other services for prisons; and providing the other services set forth in this Agreement.

WHEREAS, the District regards SM services as beneficial to the successful operations of the Prison facilities more specifically identified in Section 1(b) below as the prisons at Madison Parish (collectively referred to herein as "the Prison(s)" or "the Prison Facilities") in a manner contemplated by the District, and the District desires to obtain the services of SM.

NOW, THEREORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in consideration of the mutual covenants contained herein.

IT IS AGREED AS FOLLOWS:

**Section 1. Common Understandings**

SM and the District both acknowledge the following as of the effective date of this Agreement:

(a) The District has the authority to make contracts and leases for the procurement of services, equipment and supplies, as well as for the management and operations of prison facilities under La. R.S. 13:5904. It is the intention of the District to utilize the services of SM in connection with the operation of those aspects of the "Prisons" operation identified in this Agreement to the fullest extent permitted by law, subject to any limitations set forth in this Agreement.

(b) It is recognized that the Prison Facilities described herein include separate buildings, each of which is individually owned, but taken together as a whole, make up the Prison Facilities as described hereunder. These separate buildings pertaining to this agreement are further identified as: Southern Correctional Facility, L.L.P. (SCF), Madison Correctional Center, L.L.P. (MCC), and Louisiana Transitional Center for Women (LTCW).

(c) **Effective Date:** This Agreement shall be effective as of June 1, 2021.

**Section 2. Services**

SM is committed to the continued operation of the Prison Facilities as safe, secure, and fully utilized correctional facilities capable of generating a sufficiently stable revenue stream capable of meeting the operational costs and other obligations of the District arising out of administration and operation of the Prison Facilities, and agrees to operate and maintain the Prison Facilities in a manner that complies with state laws and regulations and Constitutional dictates that apply to such facilities in order to provide the citizens of Madison Parish with all the benefits of safe, secure, and fully utilized correctional facilities. SM, in the performance of its role as operator of the Prison Facilities, agrees to the perform the duties and satisfy the obligations set forth herein and shall provide or contract for, in compliance with all applicable law, the following services in connection with the Prison Facilities and their operations:

(a) SM will ensure that the Prison Facilities are operated and maintained for the secure custody, care and safekeeping of all prisoners at the facility in accordance with federal, state and local law, including the standards of the Louisiana Basic Jail Guidelines promulgated by the Louisiana Department of Corrections. SM shall provide the following services as part of the operation of the Prison Facilities.

   i. Adequate staffing shall be provided 24 hours a day to provide security and supervise inmates.

   ii. Three (3) meals (including two hot meals) shall be provided per day for all inmates.

   iii. Provide access to reasonable medical care either through on-site medical staff or transportation to a hospital, treatment facility or emergency care facility.

   iv. All inmates will have reasonable access to the courts and adequate legal materials.

(b) SM will manage the business affairs of the Prison Facilities, including budgeting, purchasing and procurement of materials and supplies, financial and other record keeping, audits, and regulatory compliance.

(c) SM will maintain and acquire instructional materials and supplies appropriate and sufficient to ensure compliance with Basic Jail Guidelines.

(d) SM will be responsible for all routine maintenance of the Prison Facilities and equipment, in accordance with prior agreements between the Sheriff and the owners of the respective Prison Facilities as described below.

(e) SM will manage all affairs of the Prison Facilities, including personnel and staffing, procurement of supplies; institutional safety and security; and the implementation of policies and procedures affecting prisoner welfare, institutional security, staff and inmate safety, and safe and secure visitor relations.

(f) SM will provide food service required by law that meets the dietary requirements of the inmate population and complies with constitutional mandates that accommodate Religious beliefs of the inmate population where appropriate.

(g) SM will provide all transportation services to accommodate the inmate population and facilitate maximum occupansy of the Prison Facilities.

**Section 3. Prisoners**

SM will seek to maximize the occupancy of the Prison Facilities by entering into contracts with various governmental agencies to house male and female prison inmates from the various governmental agencies at rates no less than the per diem rates established for the Housing of Louisiana Department of Corrections inmates in parish jails. Incident thereto, the following guidelines and provisions will apply:

(a) SM will market the Prison Facilities to governmental agencies responsible for housing or incarceration of persons convicted of crimes in various jurisdictions and will be available to provide information and tours of the Prison Facilities, if necessary; these entities are to include, but not necessarily be limited to: the State of Louisiana,, other Parishes, the United States Marshal's Service, and other out-of-state and/or federal entities.

(b) Sentenced inmates may be made available, upon proper approval and on reasonable terms agreeable to the District, for parish road crews or other public works and/or work-release crews, provided that the parish pays for a commissioned, trained deputy or other POST-certified peace officer to provide security during such off-site assignments and the Sheriff approves of the guards and the inmates who go on work crews outside of the Prison Facilities.

**Section 4. Term**

This Agreement shall run for a period of fifteen (15) years from the effective date of this Agreement unless otherwise terminated as provided herein.

**Section 5. Personnel**

SM shall be solely responsible for staffing the Prison Facilities and all personnel will be employees of SM, with the exception that the District may designate employees of the Sheriff who are to be assigned to the Prison Facilities to assist in the operation thereof and who shall at all times remain employees of the Sheriff. SM will be solely responsible for paying, supervising, and discharging employees who work at the Prison. All new hires must undergo a NICIC (or equivalent)

background check, have good moral character, have graduated high school or have obtained a GED, and must pass pre-employment drug testing. All personnel with responsibility for the transportation, custody and/or control of inmates of detainees shall either have completed, at a minimum, basic corrections training courses equivalent to POST corrections training courses or will complete at least basic corrections training courses within one year of the date of hiring. SM and the District both acknowledge each of the following as effective as of the date of the execution of this Agreement:

(a) SM will select a qualified Warden for the Prison.

(b) The compensation of all employees working at the Prison will remain consistent with the current pay rates being paid to the corrections personnel.

(c) SM warrants that it will comply with all applicable labor laws and regulations including, but not limited to, the Fair Labor Standards Act, the Americans with Disabilities Act, and the Family Medical Leave Act. The Sheriff has the right, at any time, to audit any records necessary to ensure compliance with the FLSA, ADA, FMLA, and other applicable laws and regulations.

(d) In the performance of this section of the Agreement, the parties will comply with the provisions of any federal, state or local law prohibiting discrimination in housing or employment on the grounds of race, color, sex, sexual orientation, disability, religion or national origin.

(e) SM shall indemnify and hold the District and the Sheriff harmless from any and all claims, causes of action, court costs, attorney fees, and losses related to and/or arising out of the operation of the Prison Facilities by SM under the terms of this Agreement and the acts and omissions of the officers, employees, contractors and agents of SM.

## Section 6. Financial Matters

### 6.1 General

All revenues generated by the operation of the Prison Facilities by SM under this Agreement, including all third party payor per diem payments for the housing, incarceration, or detention of inmates at the Prison Facilities, commissary revenues, inmate telephone revenues, work release revenues, and other revenues related to or arising out of the operation of the Prison Facilities ("Prison Revenues") received by the District and/or Sheriff will be paid to SM within seventy-two (72) hours of receipt by the District and/or Sheriff.

### 6.2 Expenses

SM shall first pay the costs and expenses associated with the operation of the Prison Facilities out of the Prison Revenues it receives from the District/Sheriff. There operational costs and expenses will be given priority and payments will be made promptly by SM as they become due, including but not limited to the following:

(a) **Payroll Cost:** SM will pay the compensation and payroll to its employees working at the Prison Facilities and all associated taxes and assessments payable to local, state and federal governments, as well as the cost of benefits provided to such employees of SM, including, but not limited to, insurance, vacation, sick leave, holiday pay, overtime and retirement plans and benefits, subject to the following exceptions:

    i. Any payments or compensation for or related to the current balance of any and all accrued vacation and sick-leave benefits accruing and remaining unused as of May 31, 2021 of the LaSalle Management Company, LLC prison staff assigned to the Prison Facilities shall be the responsibility of LaSalle Management Company, LLC. After May 31, 2021, SM will be responsible for the accrual of vacation and sick leave for its employees beginning on the day SM takes over operation control over the Prison Facilities and going forward.

    ii. Any payments or compensations for or related to Sheriff's personnel that as members of the Louisiana Sheriff's Pension and Relief Fund (the "Fund") retire or are retired from employment with the Sheriff's Office at the Prison Facilities and the costs of any benefits for these retirees conferred under the Fund while those employees were employed by the Sheriff, will be paid according to the laws and regulations applicable to the particular retiree and the Fund. SM will not be responsible for Retiree Benefits payable under the Fund for employees retired from the Sheriff's employment as members of the Fund, including the provision of health insurance benefits for retired personnel or any other benefit conferred to members of the Fund.

(b) **Utility Service Cost:** SM will ensure that monthly payments and deposits necessary for water, electricity, gas, sewage, trash disposal, pest and vermin control and extermination, decorating, laundry facilities, cable television, telephone service, and any other services specifically needed for proper and efficient operation of the prison are made in a timely manner to ensure continuous operation of the Prison Facilities.

    i. Any utility deposits currently existing will remain in place and continue to be considered and treated as assets of the District, unless and until reimbursement is made to the District.

(c) **Routine Maintenance Cost:** SM will provide normal routine maintenance and keep the Prison in good repair in accordance with local codes and in a condition at all times acceptable to the District.

    i. **Major Repairs Exclusion:** Owner(s) of the facilities involved will be responsible for any and all Major Repair(s) to the Prison Facility. Major Repair(s) includes but is not limited to the repair or replacement of: generators, air-conditioning units, boilers, roof damage, underground plumbing, structural components; foundation repair, as well as any fixture that would remain with

    the prison facility; and includes any other major expenditures for capital projects.

(d) **Liability Insurance:** SM will purchase and provide for all insurance for potential losses pertaining to the operations of the Prison Facilities. The coverage and terms of the insurance policies will include Commercial Automobile, Employment Practices Liability, and General Liability. The Insurers shall have ratings equal to or greater than the insurers issuing the referenced policies. These policies of insurance will also name the District and the Sheriff as additional insureds. SM shall also carry workers' compensation coverage in the form and amounts as required by Louisiana law. SM shall be solely responsible for the payment of any awards or settlements of damages and/or attorney fee awards that are to be paid out of any deductible according to the policies or paid in excess of the coverage provided under the policies per claim and in the aggregate. SM shall also indemnify and hold the District and Sheriff harmless for any payments of premiums, deductibles, and damages in excess of policy limits. The respective owner(s) of the Prison Facilities will be responsible for procuring and paying the cost of premiums and deductibles for any and all insurance policies insuring against any the property damage resulting to the Prison Facility and will provide for the appropriate amount of property coverage relative to owner(s) liability.

(e) **Consumable Goods:** The cost of supplies and goods utilized in the management and operation of the Prison Facilities will be paid by SM.

(f) **Automobiles:** SM will provide for such automobiles and inmate transport vehicles as it deems necessary for the operation of the Prison Facilities under the terms of this Agreement.

**6.3 Payments to District and Fee for Services**

All Prison Revenues collected by SM pursuant to this Agreement and in operation of the Prison Facility, shall be applied as follows:

(a) **Sponsor Fee:** SM shall pay a monthly sponsor fee to the District of twenty-one thousand five hundred ($21,500.00) dollars on or before the fifteenth (15th) of each month following the month in which the services were provided.

(b) **Fee For Services:** SM shall be paid a monthly fee for its services rendered hereunder. The fee payable to SM for services rendered shall be paid out of the Prison Revenues it receives and shall be all revenues remaining after it has first fully paid the all other expenses, costs, and other payables as set forth in Section 6 above in this Agreement.

**Section 7. Records**

In addition to any requirements specified herein and/or specified in the Louisiana Basic Jail Guidelines and as provided by law, MC will have the responsibility with respect to records as follows:

(a) SM shall maintain a current, complete and accurate set of records, books and accounts in connection with the operation and management of the Prison Facilities. All records, books, and accounts will comply with the Louisiana Basic Jail Guidelines and be subject to examination at reasonable hours by any authorized auditor, agent or representative of the District, The Louisiana Legislative Auditor, the Louisiana Department of Corrections, and/or any authorized representative of any lending institution that has the specific rights to examine these records.

(b) SM will furnish such information (including occupancy reports) as may be requested by the District or as required by law.

(c) SM agrees to provide the District with a copy of all reports of all incidents within 24 hours of the occurrence, including immediate notification of any escape, attempted escape, death, suicide, or attempted suicide. Such reports shall be made on forms or in a format acceptable to the District.

**Section 8.  Termination**

Prior to the end of the fifteen (15) year term, this Agreement may be terminated under the following circumstances:

(a) SM party may terminate this Agreement for any reason upon ninety (90) days written notice sent by certified mail to the other party.

**Section 9.  Escapes**

In the event an inmate incarcerated in the Prison escapes from the Prison, the Madison Parish Sheriff will also be immediately contacted and notified by personal telephonic, e-mail, and/or facsimile communication, in a manner and method that is acceptable to and as may be provided for by the District and/or Sheriff to facilitate the rapid deployment of commissioned line officers to effect the capture and return of the escaped inmate to secure custody.

**Section 10.  Governing Law**

This Agreement shall be governed by and construed in accordance with the laws of Louisiana without giving effect to the principles of conflict of laws.

**Section 11.  Entire Agreement**

This Agreement constitutes the entire Agreement of the parties hereto and supersedes all prior agreements and understandings, written or oral, between the parties relating to the subject matter contained herein.

### Section 12. Counterparts

This Agreement may be executed to one or more counterparts, each of which shall constitute an original and all of which, taken together, shall constitute one original.

### Section 13. Invalidity

If any provision or application of this Agreement, including without limitation any grant of authority by the District to SM, is held to be invalid, unlawful or unenforceable, such provision or application shall be revised or applied in a manner that renders it valid, lawful and enforceable to the fullest extent possible. In such event, the parties agree to use their best efforts to revise or apply such provision in accordance with the intent of this Agreement. The invalidity of any particular provision of this Agreement shall not affect any other provision hereof.

### Section 14. Assignment

SM shall not assign any of its rights or obligations hereunder without the prior written consent of the District.

### Section 15. Waiver

No waiver of any provision of this Agreement shall be deemed to constitute a waiver of any other provision. No such waiver shall be binding unless it is in writing and no waiver will be held to be continuing unless otherwise expressly stated by the party waiving the provision.

### Section 16. Further Assurances

In order to more fully assure each party of the benefit of contracting hereunder, each party agrees to deliver to the other party such confirmations of fact, records, certificates, instruments of assignment and other documents and things as may be reasonably requested by the other party to carry out the purposes of this Agreement.

### Section 17. Third Party Rights

The provisions of this Agreement are for the sole benefit of the parties hereto and shall not be construed as conferring any rights to any other person, except whereas otherwise expressly provided in this Agreement.

### Section 18. Amendment

This Agreement may be amended only by a written instrument executed on behalf of both SM and the District.

**Section 19. Notices**

Except for the notice required in Section 9 in the event of an escape, all notices, requests, demands and other communications hereunder shall be made in writing and shall be deemed to have been duly given if: delivered by hand, sent by overnight courier service, or sent by certified or registered mail, postage prepaid, return receipt requested, to the party to whom such notice is intended to be given at the addresses set forth herein. Any notice delivered in the manner provided above will be deemed given at the time of receipt. Until changed by notice in the manner provided above, the addresses of the parties are as follows:

>   **District:**   MADISON PARISH LAW ENFORCEMENT DISTRICT, LOUISIANA
>                   100 North Cedar Street
>                   Courthouse Building – Room 3
>                   Tallulah, Louisiana  71282
>
>   **SM:**         SECURITY MANAGEMENT, LLC
>                   Attention: Jack M. Varner, III - Managing Member
>                   123 Varner Drive
>                   Tallulah, Louisiana  71282.

**Section 20. Litigations**

SM will only be responsible and/or liable for causes of action arising out of its operation of the Prison Facilities as provided in this Agreement from the date it commences such operations. Concerning liabilities, both parties recognize and agree to the following:

> **20.1 Prior Occurrences**
> LaSalle Management Company, LLC shall remain solely responsible for any losses or costs resulting from litigation pending on or before June 1, 2021 or for lawsuits arising thereafter that relate to events or conditions which occurred or existed prior to June 1, 2021. SM agrees to cooperate with LaSalle Management Company, LLC in the defense of such suits, if any.
>
> **20.2 Post Conviction Actions**
> SM shall not be responsible for defense of any post-conviction action, including appeals and writs of habeas corpus, filed by any inmate challenging the underlying judgment of the inmate's conviction or the sentence imposed.

**Section 21. Miscellaneous**

In the event that the terms of this Agreement must be modified to comply as a qualified management agreement according to the Internal Revenue Service, both parties agree to perform those modifications. In the event this Agreement requires further approval by any governmental or regulatory entity, both parties agree to cooperate in good faith in seeking such approval.

IN WITNESS WHEREOF, the undersigned have executed this Agreement effective the date and year first above written.

**SECURITY MANAGEMENT, LLC**

By: _____
Printed Name: Jack M Varner III
Title: Manager

**WITNESSES:**

_____
Printed Name: Lisa Byrd

_____
Printed Name: Laura Wilder

**MADISON PARISH LAW ENFORCEMENT DISTRICT, LOUISIANA**

By: _____
Printed Name: Sammie L. Byrd
Title: Sheriff, Madison Parish

SWORN TO AND SUBSCRIBED before me, NOTARY PUBLIC, in and for Madison Parish, Louisiana, this 5th day of April, 2021.

_____
**NOTARY PUBLIC**
Printed Name: Ann M. Shepherd
Notary Identification Number: 39718